UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| ANTHONY WRIGHT, DANIEL HANSEN, and KENNETH PRIVETTE, Individually and on behalf of all others similarly situated | ) ) ) ) ) | Civil Action No. 2:17-cv-02654-DCN |
| *Plaintiff(s),* | ) ) ) | |
| v. | ) ) | |
| WASTE PRO USA, INC., WASTE PRO OF FLORIDA, INC., WASTE PRO OF SOUTH CAROLINA, INC., and WASTE PRO OF NORTH CAROLINA, INC. | ) ) ) ) ) | |
| *Defendant(s).* | ) ) ) ) | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
WASTE PRO USA, INC.'S MOTION TO DISMISS
PLAINTIFFS' SECOND AMENDED COMPLAINT**

COMES NOW Defendant WASTE PRO USA, INC. ("Waste Pro USA"), by and through its undersigned counsel, and hereby submits this Memorandum of Law in support of its Motion to Dismiss the Second Amended Complaint (Doc. 30-2) filed by Plaintiffs ANTHONY WRIGHT, DANIEL HANSEN, and KENNETH PRIVETTE (collectively "Plaintiffs"). Waste Pro USA moves to dismiss Plaintiffs' Second Amended Complaint for lack of subject matter jurisdiction, lack of personal jurisdiction, and for failure to state a claim, pursuant to Rules 12(b)(1), 12(b)(2) and 12(b)(6) of the Federal Rules of Civil Procedure, respectively. Waste Pro also seeks the dismissal of Plaintiffs' North Carolina state law claim for overtime compensation on preemption grounds. In support of its Motion, Waste Pro USA respectfully shows the Court the following:

## I.    FACTUAL BACKGROUND

Plaintiffs' Second Amended Complaint asserts claims under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"), the South Carolina Payment of Wages Act, South Carolina Code Ann. § 41-10-10, *et seq.* ("SCPWA"), and the North Carolina Wage and Hour Act, N.C.G.S. § 95-21.1, *et seq.* ("NCWHA"), against Waste Pro USA, Waste Pro of South Carolina, Inc. ("Waste Pro of South Carolina"), Waste Pro of North Carolina, Inc. ("Waste Pro of North Carolina"), and Waste Pro of Florida, Inc. ("Waste Pro of Florida").  [Doc. 30-2.] Plaintiffs' claims are brought in their individual capacities, and also on a collective and class wide basis on behalf of other current and former employees of the entities collectively referred to by Plaintiff as "Waste Pro."  [*Id.*]

Waste Pro USA is a Florida corporation, and maintains its principal place of business in Longwood, Florida.  [*See* Declaration of Timothy James Herman, attached hereto as **Exhibit 1**, at ¶ 3.]  Waste Pro USA is a holding company that does not provide goods or services to customers, in South Carolina or otherwise.  [*Id.* at ¶ 4.]  Waste Pro USA is not authorized to conduct business in South Carolina and it does not maintain any offices in South Carolina.  [*Id.* at ¶ 5.] Waste Pro USA does not maintain an agent for service of process in South Carolina.  [*Id.* at ¶ 6.]   Waste Pro USA does not own any property in South Carolina.  [*Id.* at ¶ 7.]  Waste Pro USA does not have any employees in South Carolina.  [*Id.* at ¶ 8.]  Waste Pro USA has not paid, nor is it required to pay, taxes in South Carolina.  [*Id.* at ¶ 9.]  Waste Pro USA does not have any bank accounts in South Carolina.  [*Id.* at ¶ 10.]

In their initial Complaint and First Amended Complaint, Plaintiffs grouped all four defendants together, referring to them collectively as "Waste Pro" or "Waste Pro Defendants." Waste Pro USA moved to dismiss the First Amended Complaint on the basis that the pleading

did not assert any specific actions by Waste Pro USA, nor did it allege any contacts between Waste Pro USA and South Carolina sufficient to establish this Court's jurisdiction. [Doc. 16.]

In their Second Amended Complaint, Plaintiffs seek to remedy these shortcomings by alleging that "Waste Pro operates its locations in different states as one common business enterprise . . . ." [Doc. 30-2.]  In support of this proposition, Plaintiffs allege, among other things, that "Defendants operate the Waste Pro business out of their headquarters in Longwood, Florida," that the Waste Pro entities have common officers and a common website, that "Waste Pro's business is a centralized, top-down operation controlled by the Waste Pro Defendants," that "there is common ownership between Waste Pro entities," that "the Waste Pro Defendants jointly determine, share or allocate responsibility" for payroll matters, workers' compensation insurance matters, human resources matters, marketing and advertising matters, and that "Waste Pro utilized one law firm to audit its payroll practices for Waste Pro collectively." [Doc. 30-2 at ¶¶ 47-68.] Plaintiffs contend, based on these allegations, that the "Waste Pro Defendants" are a "common business enterprise" and that "Plaintiffs and the Putative Class Members were jointly employed by the Waste Pro Defendants here under the FLSA . . . ." [*Id.*, ¶¶ 68-69.]  As discussed below, these new allegations are only relevant to whether Waste Pro USA could be considered an "employer" under the FLSA for liability purposes, and are not pertinent to the jurisdictional question of whether Waste Pro USA has sufficient contacts in South Carolina to render it subject to the Court's jurisdiction.

## II.    MEMORANDUM OF LAW

Waste Pro USA seeks dismissal of the Second Amended Complaint for four reasons. First, dismissal is warranted because this Court lacks personal jurisdiction over Waste Pro USA. Second, the Second Amended Complaint is fatally flawed as each Plaintiff does not have

standing to bring a claim against each Defendant.  Third, the Amended Complaint is deficient in that it improperly groups the four Defendants together without distinguishing among them. Finally, Plaintiffs' North Carolina state law claim for unpaid wages is preempted by the FLSA.

### A. The Second Amended Complaint Against Waste Pro USA Should Be Dismissed for Lack of Personal Jurisdiction.

#### 1. The Personal Jurisdiction Standard.

Waste Pro USA seeks the dismissal of Plaintiffs' Second Amended Complaint for lack of personal jurisdiction, pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure.  When a defendant challenges the court's personal jurisdiction under Rule 12(b)(2), the plaintiff has "the burden of proving" that jurisdiction exists "by a preponderance of the evidence." *Owens-Illinois, Inc. v. Rapid Am. Corp. (In re Celotex Corp.)*, 124 F.3d 619, 628 (4th Cir. 1997).  In deciding whether a plaintiff has met its burden, the court construes all disputed facts and draws all reasonable inferences from the proofs in favor of jurisdiction.  *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs.*, 344 F.3d 390, 396 (4th Cir. 2003).  In ruling on a motion to dismiss for lack of personal jurisdiction, the court may consider evidence outside of the pleadings, such as affidavits and other evidentiary materials, without converting the motion to dismiss into a motion for summary judgment.  *Magic Toyota, Inc. v. Se. Toyota Distribs., Inc.*, 784 F. Supp. 306, 310 (D.S.C. 1992).

A federal court may exercise personal jurisdiction over a defendant in the manner provided by state law.  *See* Fed. R. Civ. P. 4(k)(1)(A).  "Thus, for a district court to assert personal jurisdiction over a nonresident defendant, two conditions must be satisfied: (1) the exercise of jurisdiction must be authorized under the state's long-arm statute; and (2) the exercise of jurisdiction must comport with the due process requirements of the Fourteenth Amendment."

*Christian Science Bd. of Dirs. of the First Church of Christ v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001).

"South Carolina's long-arm statute has been interpreted to reach the outer bounds permitted by the Due Process Clause." *ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617, 623 (4th Cir. 1997). Accordingly, the jurisdictional inquiry collapses into the single question of whether an out-of-state defendant has "minimum contacts with [South Carolina] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Id.* (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *see also Callum v. CVS Health Corp.*, 137 F. Supp. 3d 817, 834 (D.S.C. 2015) ("Because the South Carolina long-arm statute is coextensive with the Due Process Clause, the sole question on a motion to dismiss for lack of personal jurisdiction is whether the exercise of personal jurisdiction would violate due process").

Personal jurisdiction may arise through general or specific jurisdiction. *CFA Inst. v. Inst. of Chartered Fin. Analysts of India*, 551 F.3d 285, 292 n. 15 (4th Cir. 2009). Under general jurisdiction, a defendant's contacts or activities in the forum state are not the basis for the suit, but it may be sued "for any reason, regardless of where the relevant conduct occurred," because its activities in the forum state are "continuous and systematic." *Id.* at n. 15. These activities must be "so substantial and of such a nature as to justify suit against [a defendant] on causes of action arising from dealings entirely distinct from those activities." *Int'l Shoe Co.*, 326 U.S. at 318. When the defendant is a corporation, "general jurisdiction requires affiliations so continuous and systematic as to render [the foreign corporation] essentially at home in the forum State, *i.e.,* comparable to a domestic enterprise in that State." *Daimler AG v. Bauman,* 134 S. Ct. 746, 758 n. 11 (2014) (internal quotations omitted).

Under specific jurisdiction, a defendant may be sued in this Court if the litigation results from alleged injuries that arose out of or related to its contacts with South Carolina. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 41 (1984).  To determine whether specific jurisdiction exists, courts employ a "minimum contacts" analysis that examines "(1) the extent to which the defendant purposefully avail[ed] itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 711 (4th Cir. 2002).

### 2.  The Court Does Not Have General Jurisdiction Over Waste Pro USA.

Plaintiffs appear to contend that Waste Pro USA is subject to specific, rather than general, jurisdiction, as the Complaint alleges that "[t]his Court has personal jurisdiction over Waste Pro because the cause of action arose within this District as a result of Waste Pro's conduct within this District."  [Doc. 30-2 at ¶ 15.]  To the extent that Plaintiffs also seek to establish this Court's general jurisdiction over Waste Pro, it is clear that Waste Pro USA lacks the requisite substantial contacts in South Carolina that would give rise to such jurisdiction.

It is settled that "with regard to nonresidents, general jurisdiction is ordinarily reserved for those defendants who have substantial contacts with the forum state that they may be considered 'essentially domiciled' within that state." *Rist v. Xcentric Ventures, Inc.*, 2013 U.S. Dist. LEXIS 82597, at *11 (D. Md. 2013).  The "place of incorporation and principal place of business" will typically be regarded as home for the corporation as these are the "paradigm bases for general jurisdiction." *Daimler AG, supra*, 134 S. Ct. at 760.  Only in an "exceptional case" might a "corporation's operations in a forum other than its formal place of incorporation or

6

principal place of business . . . be so substantial and of such a nature as to render the corporation home in that State." *Id.* at 761, n. 19.

Here, Waste Pro USA is a Florida corporation with its principal place of business in Florida. [Ex. 1 at ¶ 3.] Waste Pro USA also lacks any contacts with South Carolina in that it does not: (1) have any employees in South Carolina; (2) have any offices in South Carolina; (3) perform any services in South Carolina; (4) have a registered agent for service of process in South Carolina; (5) own any real property in South Carolina; (6) have any bank accounts in South Carolina; and (7) pay, or have an obligation to pay, any taxes in South Carolina. [*Id.* at ¶¶ 4-10.] Accordingly, Waste Pro USA is not the "exceptional case" where a nonresident company may be subjected to general jurisdiction in a foreign state. *Daimler AG*, 134 S. Ct. at 760.

> **3. Plaintiffs' Allegations that the Waste Pro Defendants Constitute a "Common Business Enterprise" or "Joint Employers" under FLSA Do Not Establish Personal Jurisdiction Over Waste Pro USA.**

As noted above, Plaintiffs added new allegations in their Second Amended Complaint seeking to establish that the "Waste Pro Defendants" constitute a "common business enterprise" and that they are "joint employers" for purposes of FLSA, such that Plaintiffs can sue all of the defendants in this Court. [Doc. 30-2, ¶¶ 47-69.] Among other allegations, Plaintiffs allege that the "Waste Pro Defendants" share a website, have common ownership and management, and "jointly determine, share, or allocate responsibility" for human resources matters, insurance matters, and other business operations. [*Id.*] Whether Waste Pro USA constitutes a "joint employer" under the FLSA, however, is only relevant to whether it may be liable under the Act; it has no bearing on whether Waste Pro is subject to personal jurisdiction in this Court. Liability under FLSA and personal jurisdiction are separate and distinct inquiries, and Plaintiffs improperly conflate the two.

Under the FLSA, a plaintiff may be employed by more than one entity at the same time. *See* 29 C.F.R. § 500.200(h)(5). Whether an entity was the plaintiff's "employer" for FLSA purposes involves an analysis of the "economic reality" of the relationship between the employee and the putative employer. *See Schultz v. Capital Int'l Sec., Inc.*, 466 F.d 298, 304 (4th Cir. 2006). In the context of joint employment coverage, determining whether separate persons or entities share control over a worker requires examination of the "circumstances of the whole activity." *Id.*, 466 F.3d at 306. In addition, a defendant may be liable under the FLSA under a theory of enterprise coverage. *See* 29 U.S.C. § 203(r). Under this basis of coverage, an enterprise "means the related activities performed (either through unified operation or common control) by any person or persons for a common business purpose . . . ." 29 U.S.C. §203(r)(1).

The question of whether an entity is a "joint employer" or part of a "common enterprise," however, relates only to coverage or liability under the FLSA, and has no bearing on whether the entity is subject to personal jurisdiction, as numerous federal courts have held. Those decisions arise from the distinction that whereas personal jurisdiction derives from a constitutional inquiry of due process, liability theories arise from federal or state statutes. The Seventh Circuit explained this distinction in *Cent. States Se. & Sw. Areas Pension Fund v. Reimer Express World. Corp.*, 230 F. 3d 934, 944-45 (7th Cir. 2000), in the context of the Multiemployer Pension Plan Amendments Act of 1980 to ERISA. 230 F.3d at 944-45. In *Reimer*, the Seventh Circuit noted that the personal jurisdiction analysis ends when a court finds a defendant does not have sufficient minimum contacts with the forum state, "without examining the plaintiff's causes of action." *Id.* at 944. The substantive law that applies to a plaintiff's claims, and thus to whether an employer may be liable, is irrelevant to the personal jurisdiction analysis "because a state or federal statute cannot transmogrify insufficient minimum contacts into a basis for

personal jurisdiction by making these contacts elements of the cause of action." *Id.* at 945. Finding otherwise, "would violate due process." *Id.*

At least one court in this Circuit has followed *Reimer* in finding that liability and jurisdiction are separate inquiries. In a Title VII case, the District of Maryland relied upon *Reimer* and rejected the application of the integrated employer test to the issue of personal jurisdiction. *See E.E.O.C. v. AMX Comm., Ltd.*, 2011 U.S. Dist. LEXIS 87440, 2011 WL 3555831, at *6 (D. Md. Aug. 8, 2011). As in this case, the plaintiff in *Reimer* contended that nonresident corporations that had no contact with Maryland were still subject to jurisdiction in Maryland because they were part of an "integrated enterprise" with an affiliated company with operations in Maryland. The court rejected that argument, finding that the nonresident defendants were not subject to personal jurisdiction in Maryland because they had no contacts in the state, and that the integrated enterprise theory of liability had no bearing on personal jurisdiction. *Id.* at *6 ("That a defendant would be liable under a statute if personal jurisdiction over it could be obtained is irrelevant to the question of whether such jurisdiction can be exercised. If a defendant does not have sufficient minimum contacts with the forum, the personal jurisdiction ends 'without examining the plaintiff's causes of action.'") (quoting *Reimer*)).

Similarly, in *Mendez v. Pure Foods Mgmt. Group, Inc.*, 2016 WL 183473 (D. Conn. Jan. 14, 2016), the district court found that "none of the possible 'single integrated enterprise' or 'dual employer' tests . . . - which might be appropriate for determining liability at a later stage of this litigation – are appropriate for determining in the first instance whether this court can exercise personal jurisdiction over the non-Connecticut defendants." The *Mendez* court justified its holding by noting that legislatures may enact different standards for what constitutes an

"employer" or an "integrated enterprise" for purposes of liability, which would result in inconsistent determinations of personal jurisdiction if a court premised jurisdiction on employer liability theories. *Id.* at *5. The *Mendez* court concluded that personal jurisdiction must be a consistent standard that does not change based on the substantive law. *Id.; see also Rashidi v. Veritiss, LLC*, 2016 U.S. Dist. LEXIS 129152, at *11-13 (C.D. Cal. Sep. 19, 2016) ("[A] joint-employer relationship may establish liability, but joint employment does ***not*** determine personal jurisdiction") (citations omitted) (emphasis in original); *In re Enter. Rent-A-Car Wage & Hour Employment Practices Litig.*, 735 F. Supp. 2d 277, 328 (W.D. Pa. 2010), *aff'd*, 683 F.3d 462 (3d Cir. 2012) ("The court is persuaded by the latter group of decisions in which the courts recognized that the joint employer theory and similar concepts are relevant for determining liability, but are not for determining whether a court may exercise personal jurisdiction over a party"); *Vogt v. Greenmarine Holding, LLC*, No. CIV.A.1:01-CV-0311-JOF, 2002 U.S. Dist. LEXIS 21013, 2002 WL 534542, at *3 (N.D. Ga. Feb. 20, 2002)("Plaintiffs argue that the proper test for personal jurisdiction is whether OMC and Defendants constitute a 'single employer' so as to be liable under [a statute]. The court finds, however, that it is improper to conflate an issue of subject matter jurisdiction with personal jurisdiction. Liability and jurisdiction are two separate inquiries.").[1]

---

[1]     The courts applying an employer liability test to the question of personal jurisdiction have largely done so without analysis. In *Hajela v. ING Groep, N.V.*, the court held that a former employee made a *prima facie* showing of joint employment by an out-of-state corporation. 582 F. Supp. 2d 227 (D. Conn. 2008). Although the court noted that the joint employer test was "for the purpose of assigning liability," it nonetheless found that the plaintiff had made a *prima facie* showing of personal jurisdiction where that liability test was met. *Id.* at 236-238. Likewise, in *Berry v. Lee*, the Northern District of Texas found that the plaintiff had demonstrated a *prima facie* case of personal jurisdiction over the out-of-state defendants using theories of liability. 428 F. Supp. 2d 546, 553 (N.D. Tex. 2006) ("Texas courts rely on the single business enterprise theory to assert jurisdiction").

Accordingly, the issue of whether Waste Pro USA could be liable under the FLSA under joint employer or enterprise coverage theories is irrelevant to whether it is subject to general personal jurisdiction in this Court. That question turns on whether Waste Pro USA is the "exceptional case" where an out-of-state corporation's contacts with the forum state are "so substantial and of such a nature as to render the corporation home in that State." *Daimler AG, supra*, 135 S. Ct. at 761. As shown above, that exceptional circumstance does not apply to Waste Pro USA here.

### 4. Waste Pro USA is Not Subject to Personal Jurisdiction under an Agency or Alter Ego Theory.

Waste Pro USA's status as the parent corporation of Waste Pro of South Carolina also does not subject it to this Court's jurisdiction. It is well-settled that a "corporation exists as a legal entity separate and distinct from its corporate shareholders." *Cancun Adventure Tours, Inc. v. Underwater Designer Co.*, 862 F.2d 1044, 1047 (4th Cir. 1988). Moreover, "[i]t is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation . . . is not liable for the acts of its subsidiaries." *United States v. Bestfoods*, 524 U.S. 51, 61 (1998). Thus, "it is generally the case that the contacts of a corporate subsidiary cannot impute jurisdiction to its parent entity." *Saudi v. Northrop Grumman Corp.*, 427 F.3d 271, 276 (4th Cir. 2005).

In order to "assert jurisdiction over a parent company based on the conduct of a subsidiary, the court must find circumstances warranting it to pierce the corporate veil." *Newman v. Motorola, Inc.*, 125 F. Supp. 2d 717, 723-23 (D. Md. 2000); *see also Dtex, LLC v. BBVA Bancomer, S.A.*, 405 F. Supp. 2d 639, 644 (D.S.C. 2005) (same). South Carolina courts consider the following eight factors to determine whether the corporate veil should be pierced: "(1) whether the corporation was grossly undercapitalized; (2) failure to observe corporate

11

formalities; (3) non-payment of dividends; (4) insolvency of the debtor corporation at the time; (5) siphoning of funds of the corporation by the dominant stockholder; (6) non-functioning of other officers or directors; (7) absence of corporate records; and (8) the fact that the corporation was merely a façade for the operations of the dominant stockholder." *Dumas v. Infosafe Corp.*, 320 S.C. 188, 192 (S.C. Ct. App. 1995). A party seeking to pierce the corporate veil must also prove injustice or fundamental unfairness if the corporate veil is not pierced. *Multimedia Publishing of S.C., Inc. v. Mullins*, 314 S.C. 551, 553 (1993).

Piercing the corporate veil requires more than merely showing that the parent failed to observe some corporate formalities. For example, in *Gray v. Riso Kaguku Corp.*, the Fourth Circuit affirmed the district court's dismissal based on lack of jurisdiction even though the parent company guaranteed the subsidiary's debts, a majority of the subsidiary's board of directors were also associated with the parent company, the parent company funded the subsidiary, and the parent company directed the subsidiary on hiring decisions and other corporate matters. *Gray*, 1996 U.S. App. LEXIS 8406, *3 (4th Cir. April 17, 1996) (unpublished) (*per curiam*). The Fourth Circuit noted in *Gray* that "[a]lthough these facts demonstrate that [the defendant] failed to observe some corporate formalities, [the plaintiff] has not sustained its burden of proving that [the defendant] has minimum contacts with South Carolina . . . [because] he has not proved that [the defendant] exerts a degree of control greater than what is normally associated with common ownership and directorship, or that [the subsidiary] is a separate entity in name alone." *Id.; see also Builder Mart of Am., Inc. v. First Union Corp.*, 563 S.E.2d 352, 358-59 (S.C. Ct. App. 2002) (holding that "unified marketing and advertising and holding out to the public as a single entity" are "insufficient to confer jurisdiction").

Plaintiffs' Second Amended Complaint contains no allegations sufficient to pierce the corporate veil, such that Waste Pro of South Carolina's contacts in South Carolina would subject Waste Pro USA to jurisdiction in this Court. Indeed, allegations similar to those in the Second Amended Complaint have been found insufficient by courts in this Circuit to establish jurisdiction under an agency or alter ego theory, including in cases involving waste management companies. *See Price v. Waste Mgmt.*, 2014 U.S. Dist. LEXIS 59735 (D. Md. 2014).

In *Price*, the plaintiff filed a Title VII discrimination lawsuit against Waste Management, Inc. ("WMI"). WMI moved to dismiss for lack of personal jurisdiction, and argued that the plaintiff was formerly employed by Waste Management of Maryland, Inc. ("WM-MD"), one of its subsidiaries, rather than by WMI. In support of its motion, WMI filed a declaration from its corporate secretary averring that (1) WMI is a Delaware company with its principal place of business in Houston, Texas, (2) WMI is a holding company and the ultimate parent company of WM-MD, (3) WMI is not qualified or licensed to do business in Maryland, (4) WMI does not maintain a registered agent, office, telephone listing, or mailing address in Maryland, (5) WMI has no employees in Maryland, (6) WMI does not supervise the employees of WM-MD or WM-MD's day-to-day activities, and (7) WMI is a separate and distinct corporate entity from WM-MD, with its own officers, directors, books, and records. *Id.* at *4. In response, the plaintiff contended that (1) WMI's Vice President of Human Resources controlled all human resources operations for all of WMI's subsidiaries, including WM-MD, (2) "WMI's Leaders, who are prominently marketed as representatives of WMI on the company website are accountable for the decisions they make for Waste Management Subsidiaries," including WM-MD, (3) WMI had "direct involvement" in her "employment decisions," (4) WMI and WM-MD shared a logo, (5)

"[t]here is no distinction to the public via signage or policy between [WMI] and [WM-MD], and (6) WMI was the overall "responsible party" for its subsidiaries." *Id.* at *23-24, 34.

The *Price* court concluded that the plaintiff had not met her burden of establishing personal liability over WMI. *Id.* at *25. The court based its conclusion on the following record evidence:

> As discussed, WMI has shown that it does not conduct, transact, or solicit business in Maryland. Moreover, WMI is not qualified or licensed to do business in Maryland; has no employees in Maryland; does not maintain an agent for service of process in the state of Maryland; and does not maintain an office, a telephone listing, or a mailing address in Maryland.

*Id.* (citations omitted.) The court further noted that "[n]othing in the record undermines" the assertions of WMI that it is a separate and distinct entity from WM-MD, with its own officers, directors, books, and records. *Id.* at * 32.

As in *Price*, Waste Pro USA is not registered to do business in South Carolina, it transacts no business in South Carolina, it has no employees in South Carolina, it owns no property in South Carolina, and it does not maintain an office or a registered agent in South Carolina. [Ex. 1 at ¶¶ 3-8.] Even accepting as true Plaintiffs' generalized allegations that Waste Pro USA exerts some control over its subsidiaries, such as Waste Pro of South Carolina, those allegations fall far short of establishing that Waste Pro USA dominates its subsidiary to the extent that it is subject to personal jurisdiction in South Carolina. *See, e.g., Gray, supra,* 1996 App. LEXIS 8406, *3; *see also Newman v. Motorola, Inc.*, 125 F. Supp. 2d 717, 723 (D. Md. 2000) ("The fact that [the parent corporation] will control certain decisions and even must approve changes does not mean the two companies operate as one.").

Because Waste Pro USA is not subject to general personal jurisdiction in this Court, Plaintiffs' claims against it should be dismissed under Rule 12(b)(2).

14

### 5.  The Court Does Not Have Specific Jurisdiction Over Waste Pro USA.

With respect to specific jurisdiction, "the touchstone . . . remains that an out-of-state person have engaged in some activity purposefully directed toward the forum state." *ESAB Grp., supra*, 126 F.3d at 625.  The purposeful availment requirement is designed to ensure that defendants are not haled into a jurisdiction as a result of "random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985).

Waste Pro USA is not subject to specific jurisdiction because it has not purposefully availed itself of the benefits of South Carolina's laws, and it has no contacts with South Carolina. As discussed above, Waste Pro USA has not conducted any activities in South Carolina that would subject it to specific jurisdiction, much less any contacts giving rise to Plaintiffs' claims in this action.   [Ex. 1 at ¶¶ 3-10.]   In addition, Plaintiff cannot establish specific personal jurisdiction over Waste Pro USA under joint employer, common enterprise, or alter ego theories, for the same reasons as discussed above with respect to general personal jurisdiction. Accordingly, Plaintiffs' claims against Waste Pro USA should be dismissed for lack of personal jurisdiction.

### B.  The Court Lacks Subject Matter Jurisdiction Because of Plaintiffs' Lack of Standing.

### 1.  The Article III Standing Requirement.

Plaintiffs' standing to bring their claims implicates the Court's subject matter jurisdiction and is governed by Rule 12(b)(1).  "[Q]uestions of subject matter jurisdiction must be decided first, because they concern the court's very power to hear the case." *Roman v. Gaupos III, Inc.*, 970 F. Supp. 2d 407, 411 (D. Md. 2013) (internal quotation and citation omitted.)  "As the party invoking federal jurisdiction, Plaintiffs bear the burden of establishing standing under Article III

of the Constitution." *Miller v. Brown*, 462 F.3d 312, 316 (4th Cir. 2006).

The Fourth Circuit has described the standing requirement as follows:

> The irreducible constitutional minimum of standing requires (1) an injury in fact – a harm suffered by the plaintiff that it concrete and actual or imminent, not conjectural or hypothetical; (2) causation – a fairly traceable connection between the plaintiff's injury and the complained-of conduct of the defendant; and (3) redressability – a likelihood that the requited relief will redress the alleged injury.

*McBurney v. Cuccinelli*, 616 F.3d 393, 402 (4th Cir. 2010).  It is not enough for Plaintiffs to rely upon unknown future putative plaintiffs to establish standing against a defendant.  *See Pashby v. Delia*, 709 F.3d 307, 316 (4th Cir. 2013) (class representatives "must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong.")

### 2. The Complaint Should Be Dismissed Because Each Plaintiff Does Not Satisfy the Standing Requirements as to Each Defendant.

In FLSA, SCPWA, and NCWHA claims, standing requires plaintiffs to plead an employer-employee relationship.  *Roman*, *supra*, 970 F. Supp. 2d at 414 (D. Md. 2013); South Carolina Code Ann. §§ 41-10-10, 41-10-80; N.C.G.S. §§ 95-25.2, 95-25.22.  Here, Plaintiffs each filed, as exhibits to the Complaint, a Consent to Join Wage Claim ("Consent"). [Doc. 30-3, 30-4, and 30-5].[2]  The Consent for each Plaintiff states as follows:

> I consent to participate in a collective action lawsuit against **WASTE PRO USA, INC.** to pursue my claims of unpaid overtime during the time *that I worked with the company*.

[Doc. 30-3, ¶ 1, 30-4, ¶ 1, and 30-5, ¶ 1 (emphasis added)].  Neither Consent suggests any employer-employee relationship with Waste Pro of South Carolina, Waste Pro of North Carolina, or Waste Pro of Florida.

---

[2]  Exhibits to a pleading are incorporated into the pleading for all purposes.  Fed. R. Civ. P. 10(c).

As this Court recently held, plaintiffs in FLSA cases must have standing to sue each defendant named in the complaint. *Crumbling v. Miyabi Murrells Inlet, LLC*, 192 F. Supp 3d 640, 646 (D.S.C. June 16, 2016). Because Plaintiffs only allege that they were employed by Waste Pro USA, *see* Doc. 30-3, 30-4, and 30-5, they lack standing as to each Defendant.

In *Crumbling*, the plaintiffs sued multiple entities, but only alleged that they were employed by some of them. In dismissing the plaintiffs' claims for lack of standing, the *Crumbling* court explained:

> For standing purposes, the Court must determine whether each defendant could be held liable to each plaintiff. Despite the FLSA's stated goal of efficiency in adjudicating similarly situated employees' claims at the same time, collective actions pursuant to § 216(b) may only be maintained where the named plaintiffs were employed by each of the Defendants.

*Crumbling*, 192 F. Supp. 3d at 646-647. This Court, while acknowledging the inherent inefficiency of requiring separate lawsuits where separate employers are involved, stated that Article III cannot be disregarded for the sake of efficiency. *Id*. at 647.

Again, Plaintiffs state in their Consents that they were employed by Waste Pro USA. Because Plaintiffs did not work for each Defendant, their injuries cannot be traced to any entities other than the one they claim employed them, Waste Pro USA. The burden is on each Plaintiff to establish standing for this Court to have subject matter jurisdiction over each Defendant. As in *Crumbling*, if these claims are to survive an Article III analysis, they must be brought in one or more lawsuits wherein each plaintiff has been employed by each defendant. *Id*. Plaintiffs' failure in this regard is fatal to the Complaint, which must be dismissed.

### C. Plaintiffs Failed to State a Claim Upon Which Relief May Be Granted as to Waste Pro USA.

The Second Amended Complaint fails to state a claim against Waste Pro USA because it improperly groups all of the defendants together as the "Waste Pro Defendants" or "Waste Pro,"

and does not identify any wrongful actions by any particular defendant.  In so doing, Plaintiffs fail to put any of the defendants on notice of their alleged conduct.

Courts in this Circuit have found generalized allegations against "Defendants" in the FLSA context insufficient to state a claim.  *See, e.g., Luna-Reyes v. RFI Constr., LLC*, 57 F. Supp. 3d 495 (M.D.N.C. 2014).  In *Luna-Reyes*, the plaintiff's complaint "repeatedly [made] factual allegations directed at 'Defendants,' without any distinction between them."  57 F. Supp. 3d at 503.  The court found that "[s]uch a conclusory and shotgun approach to pleading fails to provide each Defendant the factual basis for the claim(s) *against him* and therefore deprives them and the court of the opportunity of determining whether there are sufficient facts to make a claim against each Defendant plausible under the various bases of FLSA coverage argued by [the plaintiff]."  *Id.*  Accordingly, the court directed the plaintiff to submit a more definite statement "which specifies which facts relate to which particular Defendant such that each Defendant is put on notice of the facts against it . . . ."  *Id.* at 504.

Numerous other courts have held that generalized allegations directed toward "defendants" fail to state a claim for relief.  *See, e.g., Marcantonio v. Dudzinski,* 155 F. Supp. 3d 619 (W.D. Va. 2015) (citing *Robbins v. Oklahoma*, 519 F.3d 1242, 1250 (10th Cir. 2008) (use of "collective term 'Defendants'" not proper pleading practice); *Bryson v. Gonzales*, 534 F.3d 1282, 1290 (10th Cir. 2008) ("conclusory allegations that simply name the 'Defendants' generically" fail to state claim); *Raub v. Bowen*, 960 F. Supp. 2d 602, 616 (E.D. Va. 2013)  (concluding "vagaries" in "ambiguous" false imprisonment count asserted against "one or more Defendants" warranted dismissal); *Boykin Anchor Co. v. AT&T Corp.*, No. 5:10-CV-591-FL, 2011 U.S. Dist. LEXIS 40783, 2011 WL 1456388, at *4 (E.D.N.C. Apr. 14, 2011) (holding "plaintiff cannot rely on bare allegations relating to the conduct of 'all defendants'");

No. 1:12-CV-371, 2013 U.S. Dist. LEXIS 43224, 2013 WL 1232947, at *6 (M.D.N.C. Mar. 27, 2013) (dismissing claims where complaint "was often vague as to who took what action" and made "no specific allegations" against certain defendants); *Baca v. Callahan*, No. CV-10-885-PHX-GMS, 2010 U.S. Dist. LEXIS 82522, 2010 WL 2757251, at *1 (D. Ariz. July 12, 2010) (dismissing complaint against ten defendants that did "little to clarify each Defendant's role in the underlying transaction"); *Evans v. Chalmers*, 703 F.3d 636, 661 (4th Cir. 2012) (Wilkinson, J., concurring)*; see also Gentry v. Hyundai Motor Am., Inc.,* 2017 U.S. Dist. LEXIS 8609, 197 (W.D. Va. 2017). This Court should follow this well-settled precedent and dismiss Plaintiffs' claims against Waste Pro USA.

### D. Plaintiffs' Claim for Overtime Wages under the NCWHA Is Preempted by the FLSA.

In Count I of their Second Amended Complaint, Plaintiffs assert a claim to recover overtime compensation under the FLSA arising from Defendants' alleged failure to pay Plaintiffs "time-and-a-half rate for hours in excess of forty (40) hours per workweek . . . ." [Doc. 30-2, ¶ 115.] In Count III, Plaintiffs assert a North Carolina state law claim for overtime pay under the North Carolina Wage and Hour Act, N.C.G.S. § 95-25-1, *et seq.* [Doc. 30-2 at ¶¶ 139-147.] In that claim, Plaintiffs allege that Defendants violated the NCWHA by "failing to pay the North Carolina class members complete and correct overtime for work performed in excess of forty hours in a workweek and hence, failing to pay all wages accrued to these workers on their regular scheduled paydays." [*Id.*, ¶ 144.] Plaintiffs seek as damages "the amount of the respective unpaid wages earned and due at the regular hourly wage rate, and a rate not less than one and one-half times the hourly rate of pay for work performed in excess of forty hours in a workweek . . . ." [*Id.*, ¶ 147.]

Numerous courts in this Circuit have recognized that FLSA was enacted as a

19

comprehensive, exclusive remedial scheme to address employees' rights to overtime pay. *Anderson v. Sara Lee Corp.*, 508 F.3d 181 (4th Cir. 2007) (holding that the FLSA preempts state law causes of action premised upon failure to pay overtime); *McMurray v. LRJ Rests., Inc.*, 2011 U.S. Dist. LEXIS 7717, at *5-6 (D.S.C. Jan. 26, 2011) ("The FLSA provides the exclusive remedial scheme to address employees' rights to be paid a minimum wage for hours worked and to be paid overtime for all hours worked in excess of forty in a given workweek"); *Nimmons v. RBC Ins. Holdings (USA), Inc.*, 2007 U.S. Dist. LEXIS 94467, at *7 (D.S.C. Dec. 27, 2007) (same); *Nettles v. Techplan Corp.*, 704 F. Supp. 95, 100 (D.S.C. 1988) (dismissing state law negligence claim based on failure to pay overtime and holding that FLSA is the exclusive remedy to recover overtime wages).   Because Plaintiffs' NCWHA claim alleges the same violation as their FLSA overtime claim – the failure to pay a time-and-a-half rate for all hours worked over forty in a workweek – it is duplicative of the FLSA overtime claim asserted in Count III, and it should be dismissed as preempted by the FLSA.

## III.    CONCLUSION

Because Waste Pro USA has no contacts with South Carolina, it is not subject to the general or specific jurisdiction of this Court.  Additionally, the Second Amended Complaint fails for lack of subject matter jurisdiction because each Plaintiff does not have a claim against each Defendant.  Moreover, by lumping together Defendants with generic allegations, Plaintiffs have failed to state a claim upon which relief may be granted under the federal pleading standards set forth in *Twombly* and *Iqbal.*  Accordingly, Plaintiffs' claims against Waste Pro USA should be dismissed for lack of personal jurisdiction, lack of subject matter jurisdiction, and failure to state a claim, pursuant to Rules 12(b)(1), (b)(2) and (b)(6) of the Federal Rules of Civil Procedure, respectively.  Finally, Plaintiffs' state law claim for overtime wages under the NCWHA should

be dismissed as preempted by the FLSA.

Respectfully submitted this 20th day of December, 2017.

LAW OFFICE OF LEAH B. MOODY, LLC

By: /s/ Leah B. Moody
Leah B. Moody, Esq.
Federal Bar No.: 7469
235 East Main Street, Suite 115
Rock Hill, South Carolina 29730
Email: LBMatty@comporium.net
Telephone: (803)327-4192

*Counsel for Defendant Waste Pro USA, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was furnished to the

below-named attorney on this 20th day of December, 2017.

___ HAND DELIVERY          **Ben Whaley Le Clercq, Esquire**
___ U.S. MAIL              Le Clercq Law Firm, P.C.
___ FAX TRANSMISSION       708 S. Shelmore, Suite 202
___ E-MAIL TRANSMISSION    Mt. Pleasant, South Carolina 29464
✓ ECF NOTICE               Ben@leclercqlaw.com


/s/ Leah B. Moody
Leah B. Moody, Esquire

21