# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
### CHARLESTON DIVISION

| | | |
|---|---|---|
| Anthony Wright, Daniel Hansen, and Kenneth Privette, *all individually and on behalf of all others similarly situated* | ) ) ) | |
| | ) | No. 2:17-cv-02654 |
| Plaintiffs, | ) ) | **ORDER** |
| vs. | ) ) ) | |
| Waste Pro USA Inc., Waste Pro of Florida, Inc., Waste Pro of South Carolina, Inc., Waste Pro of North Carolina, Inc., | ) ) ) ) | |
| Defendants. | ) ) ) | |

This matter comes before the court on defendants Waste Pro USA and Waste Pro of Florida's ("Waste Pro FL") motions to dismiss for lack of personal jurisdiction, lack of subject-matter jurisdiction, failure to state a claim, and preemption, ECF Nos. 37, 38; on Waste Pro of South Carolina's ("Waste Pro SC") and Waste Pro of North Carolina's ("Waste Pro NC") motions to dismiss for lack of subject-matter jurisdiction, failure to state a claim, and preemption, ECF Nos. 39 and 40; and on plaintiffs Anthony Wright ("Wright"), Daniel Hansen ("Hansen"), and Kenneth Privette's ("Privette") (collectively, "plaintiffs") motion to sever and transfer, ECF No. 129. For the reasons set forth below, the court **GRANTS** Waste Pro USA and Waste Pro FL's motions to dismiss and **DISMISSES** them as defendants from this case. The court also **DISMISSES** all plaintiffs who are not employees of Waste Pro SC or Waste Pro NC. The court **GRANTS** Waste Pro NC and Waste Pro SC's motion to dismiss plaintiffs' North Carolina Wage and Hour Act ("NCWHA") claim. The court finds that the remaining

1

North and South Carolina plaintiffs do not have standing to sue both Waste Pro NC and Waste Pro SC and orders plaintiffs to file an amended complaint pursuant to the instructions given in this order. The court finds **MOOT** defendants remaining arguments, but defendants may re-file their motions regarding standing and failure to state a claim if plaintiffs do not properly re-plead their complaint. This order also renders **MOOT** plaintiffs' motion to sever and transfer.

## I. BACKGROUND

Plaintiffs brought this action against defendants individually on a collective and class wide basis. Plaintiffs are waste disposal drivers for defendants. They claim that, due to the defendants' company-wide policies, they were deprived of wages for hours actually worked. According to plaintiffs, defendants did this in the following ways: (1) erroneously calculating their prevailing hourly rate; (2) only paying plaintiffs "half-time" for all hours worked over forty hours in a given workweek; (3) requiring them to perform pre-shift and post-shift duties while not clocked in; and (4) automatically deducting thirty minutes for lunch breaks that defendants knew plaintiffs worked through. Plaintiffs bring this action on behalf of all other similarly situated non-exempt waste disposal drivers who were paid a day rate and who have been employed by Waste Pro entities throughout the United States, at any time from September 29, 2014 through the final disposition of this matter. Plaintiffs all filed consent forms to join this collective action lawsuit against Waste Pro USA only. ECF Nos. 30-3, 30-4, 30-5. However, each plaintiff specifies that they work or worked for a particular Waste Pro facility—Wright worked at Waste Pro's facility in Florida, Hansen in South Carolina, and Privette in North Carolina.

Plaintiffs filed suit in this court on October 2, 2017, and filed their second amended complaint on December 5, 2017, bringing the following causes of action: (1) violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, et seq.; (2) violation of the South Carolina Payment of Wages Act ("SCPWA"), South Carolina Code §§ 41-10-10, et seq.; and (3) violation of the NCWHA, North Carolina General Statutes §§ 95-25.1, et seq.. ECF No. 30-2. On December 20, 2017, Waste Pro USA and Waste Pro FL filed a motion to dismiss for lack of subject matter jurisdiction, lack of personal jurisdiction, and failure to state a claim, and also seeking the dismissal of plaintiffs' North Carolina claim based on preemption grounds. ECF Nos. 37 and 38. The other defendants filed nearly identical motions that same day, with Waste Pro SC and Waste Pro NC declining to bring a motion to dismiss for lack of personal jurisdiction. ECF Nos. 39 and 40. On January 16, 2018, plaintiffs filed virtually identical responses to all of the motions. ECF Nos. 46, 47, 48, and 49. On February 2, 2018, defendants filed a joint reply to those responses. ECF No. 54. Pursuant to the court's order to conduct jurisdictional discovery, WP USA and WP FL filed their supplemental briefing on the personal jurisdiction issue on November 30, 2018, ECF No. 124, and plaintiffs filed their supplemental briefing on February 15, 2019, ECF No. 141, and filed a reply to plaintiffs' brief on February 25, 2019, ECF No. 143.

The matters have been fully briefed and are now ripe for the court's review.

## II.  STANDARDS

### A.  Motion to Dismiss for Lack of Personal Jurisdiction

When the defendant challenges personal jurisdiction, the plaintiff has the burden of showing that jurisdiction exists. See In re Celotex Corp., 124 F.3d 619, 628 (4th Cir.

3

1997). When the court decides a personal jurisdiction challenge without an evidentiary hearing, the plaintiff must prove a prima facie case of personal jurisdiction. See Mylan Labs, Inc. v. Akzo, N.V., 2 F.3d 56, 60 (4th Cir. 1993). "In considering the challenge on such a record, the court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." In re Celotex Corp., 234 F.3d at 628 (quoting Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989)). However, the court need not "credit conclusory allegations or draw farfetched inferences." Masselli & Lane, PC v. Miller & Schuh, PA, 215 F.3d 1320 (4th Cir. 2000).

### B. Motion to Dismiss for Lack of Subject Matter Jurisdiction

Defendants' standing argument implicates this court's subject matter jurisdiction and is governed by Rule 12(b)(1). Crumbling v. Miyabi Murrells Inlet, LLC, 192 F. Supp. 3d 640, 643 (D.S.C. 2016). The determination of subject matter jurisdiction must be made at the outset before any determination on the merits. Steel Co. v. Citizens for a Better Environment, 523 U.S. 83 (1998). "The plaintiff bears the burden of persuasion if subject matter jurisdiction is challenged under Rule 12(b)(1)." Williams v. United States, 50 F.3d 299, 304 (4th Cir. 1995). If the plaintiff cannot overcome this burden, then the claim must be dismissed. Welch v. United States, 409 F.3d 646, 651 (4th Cir. 2005). When a party contends that "the complaint [] fails to allege facts upon which subject matter jurisdiction can be based[,] . . . all the facts alleged in the complaint are assumed to be true." Luna-Reyes v. RFI Const., LLC, 57 F. Supp. 3d 495, 499 (M.D.N.C. 2014) (quoting Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982)). "[A] trial court should dismiss under Rule 12(b)(1) only when the jurisdictional allegations are 'clearly . . .

immaterial, made solely for the purpose of obtaining jurisdiction or where such a claim is wholly unsubstantial and frivolous.'" Kerns v. United States, 585 F.3d 187, 193 (4th Cir. 2009) (quoting Bell v. Hood, 327 U.S. 678, 682 (1946)).

### C. Motion to Dismiss for Failure to State a Claim

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss for "failure to state a claim upon which relief can be granted." When considering a Rule 12(b)(6) motion to dismiss, the court must accept the plaintiff's factual allegations as true and draw all reasonable inferences in the plaintiff's favor. See E.I. du Pont de Nemours & Co. v. Kolon Indus., 637 F.3d 435, 440 (4th Cir. 2011). But "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). On a motion to dismiss, the court's task is limited to determining whether the complaint states a "plausible claim for relief." Id. at 679. Although Rule 8(a)(2) requires only a "short and plain statement of the claim showing that the pleader is entitled to relief," "a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570).

### III. DISCUSSION

### A. Motion to Dismiss for Lack of Personal Jurisdiction

Defendants Waste Pro USA and Waste Pro FL seek dismissal of plaintiffs' second amended complaint for lack of personal jurisdiction, pursuant to Federal Rule of Civil

Procedure 12(b)(2).[1]  ECF No. 37 at 4.  The court has considered whether it may exercise jurisdiction over these entities under various legal grounds—general personal jurisdiction, specific personal jurisdiction, joint employer / single integrated enterprise theory ("JE/SIE theory"),[2] and agency theory.   The court has analyzed the evidence the parties have put forth in their supplemental briefings and finds that plaintiffs have not demonstrated that the court should exercise personal jurisdiction over Waste Pro USA or Waste Pro FL under any of these legal grounds.

## 1.  Background Law on Personal Jurisdiction

In evaluating a challenge to personal jurisdiction under a state's long-arm statute, the court engages in a two-step analysis.  Ellicott Mach. Corp. v. John Holland Party Ltd., 995 F.2d 474, 477 (4th Cir. 1993).  First, the long-arm statute must authorize the exercise of jurisdiction under the facts presented.  Id.  Second, if the statute does authorize jurisdiction, then the court must determine if the statutory assertion of personal jurisdiction is consistent with due process.  Id.  South Carolina's long-arm statute extends to the outer limits allowed by the Due Process Clause.  Foster v. Arletty 3 Sarl, 278 F.3d 409, 414 (4th Cir. 2002).  Consequently, the only question before the court is whether the

---

[1] Interestingly, Waste Pro NC has not contested the court's personal jurisdiction over it, despite being a foreign corporate defendant.

[2] As the order will show, courts use a variety of titles to discuss this particular theory of liability and jurisdiction.  Plaintiffs have used the following terms to argue for the court's exercise of personal jurisdiction over all of the defendants as a single integrated business entity:  joint employment, joint employer, common business enterprise, joint and integrated enterprise, single enterprise, single business enterprise.  For the sake of consistency, the court uses the terms joint employer / single integrated enterprise theory ("JE/SIE theory") because they are the terms most frequently used by other courts that have addressed this potential legal theory for personal jurisdiction.

exercise of personal jurisdiction would violate due process. ESAB Grp., Inc. v. Centricut, LLC, 34 F. Supp. 2d 323, 328 (D.S.C. 1999).

The due process test for personal jurisdiction involves two components: minimum contacts and fairness. See World–Wide Volkswagen Corp. v. Woodson, 444 U.S. 286 (1980). Under the minimum contacts test, a nonresident defendant must have certain minimum contacts such that the suit does not offend "traditional notions of fair play and substantial justice." Int'l Shoe Co. v. State of Wash., Office of Unemployment Compensation and Placement, 326 U.S. 310, 316 (1945). Due process is satisfied if the court asserts personal jurisdiction over a defendant who "purposefully avails itself of the privilege of conducting activities within the forum state," Hanson v. Denckla, 357 U.S. 235, 253 (1958), such that it "should reasonably anticipate being haled into court there," World-Wide Volkswagen, 444 U.S. at 297. After a showing of the defendant's purposeful availment, the reasonableness inquiry balances any burden on the defendant against countervailing concerns such as the plaintiff's interest in obtaining relief and the forum state's interest in the controversy. See id. at 292.

A party may be subject to the court's power either through general personal jurisdiction or specific personal jurisdiction. A court has general personal jurisdiction over a foreign corporation when its contacts within the forum state "are so 'continuous and systematic' as to render them essentially at home." Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011) (quotes omitted). "[T]he paradigm forum for the exercise of general jurisdiction is the individual's domicile" and for a corporation, it is the corporation's place of incorporation and principal place of business. Daimler AG v. Bauman, 571 U.S. 117, 137 (2014). While this is the general rule, there

may be "an exceptional case" in which "a corporate defendant's operations in another forum 'may be so substantial and of such a nature as to render the corporation at home in that State.'" BNSF Ry. Co. v. Tyrrell, 137 S. Ct. 1549, 1558 (2017) (quoting Daimler, 571 U.S. at 139 n.19). For example, the Supreme Court found a Philippine Island corporation to be essentially at home in Ohio because it was forced to set up a temporary principal place of business in Ohio while activities in the Philippines were ceased during World War II. Perkins v. Benguet Consol. Mining Co., 342 U.S. 437, 447–48 (1952).

Specific personal jurisdiction arises when a cause of action is related to the defendant's activities within the forum state. See S.C. Code Ann. § 36-2-803; Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984). The Fourth Circuit has established a three-part test for evaluating the propriety of exercising specific jurisdiction: (1) whether and to what extent the defendant purposely availed itself of the privileges of conducting activities in the forum state, and thus invoked the benefits and protections of its laws; (2) whether the plaintiff's claims arise out of those forum-related activities; and (3) whether the exercise of jurisdiction is constitutionally "reasonable." Christian Sci. Bd. of Dirs. of the First Church of Christ v. Nolan, 259 F.3d 209, 215–216 (4th Cir. 2001) (citing Helicopteros, 466 U.S. at 414–16; Burger King v. Rudzewicz, 471 U.S. 462, 472, 476–77 (1985)).

## 2. No General Personal Jurisdiction over Waste Pro USA

Plaintiffs have not demonstrated that Waste Pro USA should be subject to the court's general or specific personal jurisdiction. Courts can exercise general personal jurisdiction over foreign (out of state) corporations in two ways: (1) if the corporation's contacts within the forum state "are so 'continuous and systematic' as to render them

8

essentially at home," Goodyear, 564 U.S. at 919; and (2) if the foreign corporation is a

parent company with a subsidiary that is subject to the court's general personal

jurisdiction and if "the subsidiary functions as the agent or mere department of the

parent" in a manner that justifies treating it as an alter ego and/or piercing the corporate

veil, Builder Mart of Am., Inc. v. First Union Corp., 563 S.E.2d 352, 358 (S.C. Ct. App.

2002), overruled on other grounds by Farmer v. Monsanto Corp., 579 S.E.2d 325 (S.C.

2003).

  "A court can assert general jurisdiction over business entities only when the

'continuous corporate operation within a state is thought so substantial and of such a

nature as to justify suit against it on causes of action arising from dealings entirely

distinct from those activities.'" Afa Polytek (N. Am.) Inc. v. Clorox Co., 2014 WL

12608562, at *4 (D.S.C. Jan. 17, 2014) (quoting Nichols v. G.D. Searle & Co., 991 F.2d

1195, 1199 (4th Cir. 1993)). "With respect to a corporation, the place of incorporation

and principal place of business are 'paradig[m] . . . bases for general jurisdiction.'"

Daimler, 571 U.S. at 137. Although the standard for exercising general personal

jurisdiction over an out-of-state corporate defendant "is a stringent one, it is the

consequence of the problems inherent in attempting to sue a foreign corporation that has

carefully structured its business so as to separate itself from the operation of its wholly-

owned subsidiaries—as it may properly do." Builder Mart, 563 S.E.2d at 358.

Furthermore, "the mere fact that a subsidiary has minimum contacts with a forum is not

enough to confer personal jurisdiction over the parent company." Afa Polytek, 2014 WL

12608562 at *5; accord Jazini by Jazini v. Nissan Motor Co., 148 F.3d 181, 184 (2d Cir.

1998) ("[T]he presence of the subsidiary alone does not establish the parent's presence in

the state."). Such a model would "approve the exercise of general jurisdiction in every State in which a corporation engages in a substantial, continuous, and systematic course of business," which is a formulation that the Supreme Court has held to be "unacceptably grasping." Daimler, 571 U.S. at 138.

Plaintiffs have not demonstrated that Waste Pro USA's contacts with South Carolina are so "continuous and systematic" that this state could be considered the corporation's home. Waste Pro USA's state of incorporation and principal place of business is Florida. ECF No. 37-2 ¶ 3. It is a holding company that does not provide goods or services in South Carolina or elsewhere, nor is it authorized to conduct business in South Carolina. Id. ¶ 4–5. It does not own any real property, have any bank accounts, or pay taxes in this state. Id. ¶ 7, 9–10. Finally, Waste Pro USA does not have any direct employees in South Carolina or maintain an agent for service of process here. Id. ¶¶ 6, 8. Plaintiffs have provided certain evidence to the court of Waste Pro USA's limited involvement in South Carolina through its subsidiary, Waste Pro SC, which will be discussed in greater detail in the sections on alter ego and piercing the corporate veil. However, none of this evidence or any of plaintiffs' allegations about Waste Pro USA show that Waste Pro USA operates so continuously and systematically in South Carolina as to render this state its "home."

While the mere presence of a subsidiary within the court's personal jurisdiction does not subject a foreign corporation to the court's reach, courts may rely on agency principles to exercise personal jurisdiction over a parent corporation through its subsidiary if the parent company exercises a certain level of control and supervision over its subsidiary. South Carolina courts recognize two tests that will subject a parent

corporation to the court's personal jurisdiction through its subsidiary—alter ego and piercing the corporate veil.  See, e.g., Builder Mart, 563 S.E.2d at 358; Afa Polytek, 2014 WL 12608562, at *6; ScanSource, Inc. v. Mitel Networks Corp., 2011 WL 2550719, at *6 (D.S.C. June 24, 2011); see also Mendez v. Pure Foods Mgmt. Grp., Inc., 2016 WL 183473, at *1–7 (D. Conn. Jan. 14, 2016) ("Under the agency test, the court may attribute the subsidiary's actions to the parent if the parent exerts considerable control over the activities of the subsidiary."); Wm. Passalacqua Builders, Inc. v. Resnick Developers S., Inc., 933 F.2d 131, 142–43 (2d Cir. 1991) (observing that when parties are actually alter egos of one another, a "jurisdictional objection evaporates" because "the alter egos are treated as one entity").

### i.   Alter-Ego / Agency

In determining whether to exercise jurisdiction based on the alter-ego theory, the court must find the following factors: (1) common ownership; (2) financial independence; (3) degree of selection of executive personnel and failure to observe corporate formalities; and (4) the degree of control over marketing and operational policies.  Builder Mart, 564 S.E.2d at 358.  "For the courts to have personal jurisdiction" under this theory, the plaintiff "must show that the subsidiary functions as the agent or mere department of the parent—that is, that the subsidiary does all the business which the parent corporation could do if here on its own."  Id.  "It is essential that all four factors be present with sufficient factual specificity to confer jurisdiction on [ ] courts."  Id.

Plaintiffs attached multiple exhibits to their supplemental briefing reflecting the evidence they collected during jurisdictional discovery which they claim shows that Waste Pro USA and Waste Pro SC were operating as mere alter-egos of each other, such

that the court should exercise personal jurisdiction over Waste Pro USA because it has general personal jurisdiction over Waste Pro SC. First, plaintiffs' supplemental briefing does not include any evidence of common ownership, although it does show that all four defendants have the same CEO and CFO. However, this alone does not create personal jurisdiction via an alter ego theory. See ScanSource, Inc., 2011 WL 2550719, at *5 ("[T]he fact that [the parent and subsidiary], like many companies, share executives does not establish that [the parent] controls the selection of the executives."); Weiss v. La Suisse, 69 F.Supp.2d 449, 458 (S.D.N.Y.1999) ("[T]he overlap of directors and officers between parent and subsidiary alone does not render the subsidiary a 'mere department' for jurisdictional purposes."). It is also worth noting that each subsidiary is independently operated by a regional vice president, and the various regions within the states controlled by those subsidiaries are operated by district managers who make most, if not all, employment-related decisions independently from Waste Pro USA, as discussed further along in this section.

With regard to the second factor, financial independence, plaintiffs have not given the court much except for the fact that WP USA is the named insured on most Waste Pro insurance policies, including worker's compensation policies; but the subsidiaries also appear as additional named insured on some policies. ECF No. 141 at 28 (citing ECF No. 141-23). The fact that a parent corporation coordinates insurance policies with and on behalf of its subsidiaries does not meet the level of integration required by the alter-ego theory. In regards to the third factor, the degree of selection of executive personnel and failure to observe corporate formalities, neither party has offered any information about whether the corporations have disregarded their corporate formalities—there is no

information on whether they have failed to issue stock, failed to hold shareholder meetings and elect the necessary directors and executive personnel, or neglected to properly document all transactions between the subsidiary and its parent.

Most of the evidence submitted by both parties relates to the fourth factor, the degree of control over marketing and operational policies, or, more specifically, how Waste Pro USA presents itself to the world and how much Waste Pro USA is involved in the daily functions of Waste Pro SC. Plaintiffs argue that Waste Pro USA and its subsidiaries consistently hold themselves out to the public as a single entity. ECF No. 144 at 22. In addition to testimony from employees that "Waste Pro" held itself out as a single entity, plaintiffs point to "Waste Pro's" single website that contains job postings for all Waste Pro entities, using a single Waste Pro logo that is owned by Waste Pro USA. Id. at 17. Additionally, regional vice presidents sometimes present themselves as employees of Waste Pro USA, and a report from the Department of Labor discusses the various subsidiaries of the company as "branches." However, "unified marketing and advertising and holding out to the public as a single entity, without more, [is] insufficient to confer jurisdiction." Builder Mart, 563 S.E.2d at 358–59 (finding that the corporation's use of a sign post with the moniker "First Union" throughout South Carolina did not create personal jurisdiction through agency theory). Using a common logo on a hiring website is not enough to create an agency relationship sufficient to warrant personal jurisdiction, especially when the logo and hiring website are not relevant to the plaintiff's allegations, which center on the defendants' failure to set appropriate pay rates.

Plaintiffs submit to the court an offer letter sent to Christopher Montero in Ladson, South Carolina on July 21, 2014, which says "[w]e are pleased to offer you the position of Residential Driver with Waste Pro USA. We are looking forward to you becoming a valuable addition to our team in the Waste Pro of South Carolina Department . . . " ECF No. 141-16, Ex. Q at 4. Plaintiffs argue that this language—offering him employment with Waste Pro USA and not Waste Pro SC, but treating Waste Pro SC as a department of Waste Pro USA—shows that Waste Pro USA is in fact a single entity over which the court should have complete personal jurisdiction. However, as just discussed, merely holding itself out as a single entity does not create personal jurisdiction through agency, and referring to Waste Pro SC as a "department" in an offer letter does not amount to a legal conclusion that the court can rely upon. The court does not find it unusual that a company would use common language in an offer letter rather than espousing the details of the proper corporate structure. Furthermore, that same letter informs the new hire that he will report to James Lanier, Division Manager, who is an employee of Waste Pro SC, not Waste Pro USA.

Plaintiffs also rely heavily on language in the company handbooks that use phrases like "one company, one team," "corporate behavior," and "the culture of our organization." ECF No. 141 at 18. Having a central handbook that is used by each subsidiary does not demonstrate that the various subsidiaries and Waste Pro USA are all alter-egos of one another. And rhetoric such as this does not qualify as evidence of direct control over the Waste Pro SC by its parent corporation. See Jazini v. Nissan Motor Co., 148 F.3d 181, 183–86 (2d Cir. 1998) ("None of this material, and especially not a request

for world-wide cooperation, shows the pervasive control over the subsidiary that the 'mere department' standard requires.")

Next, the court considers all of plaintiffs' evidence regarding the systems and processes that the subsidiaries share with Waste Pro USA. The Waste Pro entities all use the same centralized computer network and software systems, including an ADP computer system for paying employees. ECF No. 141 at 25. Waste Pro USA's Corporate Payroll Manager also signs off on Waste Pro SC time cards. The handbooks themselves provide instructions to employees about family and medical leave, vacation, insurance policies, and equal employment policies. Yet this alone is not evidence that Waste Pro actually manages all of these things in place of the subsidiaries. In fact, the various division managers and regional vice presidents, who are employed by the subsidiaries in their respective states, have submitted declarations attesting to the high level of involvement and control that they, and not Waste Pro USA, exercise over their employees. Most importantly, the mere fact that a parent corporation provides support services for its subsidiaries does not create agency or demonstrate an alter ego for jurisdictional purposes. See Nat'l Prod. Workers Union Trust v. CIGNA Corp., 2007 WL 1468555, at * 10 (N.D.Ill. May 16, 2007) (finding that provision of support services, including advanced costs, by parent for subsidiary, "are part and parcel of the normal incidents of a parent-subsidiary relationship"); Action Mfg. Co. v. Simon Wrecking Co., 375 F.Supp.2d 411, 425 (E.D. Pa. 2005) (finding that sharing services "such as human resources and information technology services, and office space and infrastructure," does not indicate a lack of corporate formality).

This district addressed the issue of personal jurisdiction over a foreign parent corporation through agency theories in ScanSource, Inc. v. Mitel Networks Corp., 2011 WL 2550719 (D.S.C. June 24, 2011). ScanSource involved some similar facts as in the current case: (1) the parent's website listed South Carolina subsidiary locations as its "partners"; (2) there were emails between the parent company's employees and the plaintiff's employees over payment issues for a contract the plaintiffs had signed with the defendant subsidiary company; (3) there were customer applications and purchase orders between the plaintiff and the defendant subsidiary regarding a contract between them in which the subsidiary listed its parent company's address as the subsidiary's own address; and (4) the plaintiffs unearthed a contract that the parent company had signed to guarantee its subsidiary in the contract that was under dispute in the matter, in which the same person who signed on behalf of the parent corporation signed on behalf of the subsidiary. Yet the court found that "the fact that [the parent] and its subsidiaries share a payment processing center does not equate to [the parent] and its subsidiaries failing to be financially independent of each other." ScanSource, 2011 WL 2550719 at *6. The court also gave little weight to the fact that the parent served as a guarantor to its subsidiary or had a website that listed contact information for all of its subsidiaries.

Like the inconsequential reference to "partners" in ScanSource, the fact that Waste Pro USA has referred to its subsidiary companies by the informal title of "division" rather than emphasizing these are distinct corporate entities does not give rise to jurisdiction. Plaintiffs also submitted emails showing that Waste Pro USA employees were "involved in bonus decisions for employees in the subsidiaries." ECF No. 141 at 18, citing 141-7, Ex. G. Yet, as in ScanSource, emails from the parent company

regarding the business operations of the subsidiary not a smoking gun. Finally, the plaintiffs have given the court a contract for sale of property in South Carolina that was signed by the CEO of Waste Pro USA on behalf of Waste Pro SC. ECF No. 141-5, Ex. E. While different than signing as a guarantor like in ScanSource, the fact that the parent's CEO signed a contract on behalf of the subsidiary is not surprising considering that he is also the CEO of the subsidiary. This contract does not indicate that the corporations are so financially intertwined that they should be treated as alter-egos of one another.

The final group of evidence upon which plaintiffs rely in order to establish that Waste Pro USA exercised control over Waste Pro SC's operational policies are sections from the 2017 Handbook that dictate the procedures concerning employees' compensation, benefits, payroll deductions, paychecks, overtime, performance reviews, and time records. ECF No. 141 at 18. The Handbook further states that "Waste Pro USA Inc. entities" are allowed to develop their own departmental attendance policies, but they must be "consistent with the overall corporate policy and approved by Human Resources." Id. at 17. First, the court notes that while plaintiffs cite to "WPSC 0210-216 and WPSC 0221" as support for these summaries of the Handbooks, there is no citation reference to indicate where these documents reside on ECF, preventing the court from confirming their accuracy by finding the proper attachments on ECF. However, even presuming them to be accurate, such a scant indication from the 2017 Handbook that Waste Pro USA is intimately involved in the daily operations of its subsidiaries is buttressed by multiple declarations from employees of the various Waste Pro subsidiaries showing that most operational decisions are carried out at the subsidiary level. For

example, each subsidiary is divided into regions, which are run by a regional vice president; and each region can then be divided into divisions, which are controlled by a division manager, who reports directly to the regional vice president. Both the regional vice presidents and the division managers are employees, not of Waste Pro USA, but of the subsidiary within their respective states. These regional vice presidents help determine what contracts to pursue, how to price bids and market the company's services, and what personnel and equipment are needed in each division within their region. ECF No. 104-3, Decl. Russell Mackie ¶ 2; ECF No. 104-5, Decl. David Schneider ¶ 5. They have specific employees within their divisions to handle accounting, marketing, operations, and human resources. The division managers are allowed to hire new employees as the need arises and generally determine how to compensate them and whether to terminate any employer. See, e.g., ECF No. 104-4 ¶ 7. As one regional vice president put it, while "Waste Pro USA provides guidance to its subsidiaries [ ] regarding employment policies . . . it is ultimately up to [ ] the Regional Vice President to adopt policies that are appropriate for" his or her region. ECF No. 104-3 ¶ 10. The routes that drivers take, as well as the days and times of shifts are decided by the division, without any involvement by Waste Pro USA. ECF NO. 104-4 ¶ 9. Furthermore, these declarations demonstrate that division managers, as employees of the subsidiaries, are the ones making the vast majority of the decisions regarding salary, payroll, overtime, and bonuses. This testimony from the various employees of Waste Pro subsidiaries show that there are some differences across the subsidiaries as to how they operate their various divisions, indicating that Waste Pro USA does not exercise a strict level of control over its subsidiaries such that they are alter egos of one another. "If these facts were sufficient

18

to confer jurisdiction over a parent company, virtually all parent companies could be hauled into every forum in which its subsidiaries did business." ScanSource, 2011 WL 2550719, at *6.

Based on the foregoing, the court finds that Waste Pro USA is not subject to the court's general personal jurisdiction through agency / alter-ego theory.

## ii. Piercing the Corporate Veil

While overlapping slightly with the alter-ego analysis, South Carolina's test for piercing the corporate veil requires that the court to find that "a number," although not all, of the following factors weigh in favor of "disregard[ing] the corporate entity":

1. whether the corporation was grossly undercapitalized;
2. failure to observe corporate formalities;
3. non-payment of dividends;
4. insolvency of the debtor corporation at the time;
5. siphoning of funds of the corporation by the dominant stockholder;
6. non-functioning of other officers or directors;
7. absence of corporate records; and
8. the fact that the corporation was merely a facade for the operations of the dominant stockholder.

Dumas v. InfoSafe Corp., 463 S.E.2d 641, 644 (S.C. Ct. App. 1995). In addition to these factors, the plaintiff must prove "an element of injustice or fundamental unfairness if the acts of the corporation be not regarded as the acts of the [parent]." Sturkie v. Sifly, 313 S.E.2d 316, 318 (S.C. Ct. App. 1984). To demonstrate the presence fundamental unfairness, the plaintiff must show that "(1) the defendant was aware of the plaintiff's claims against the corporation, and (2) thereafter, the defendant acted in a self-serving manner with regard to the property of the corporation and in disregard of the plaintiff's claim in the property." Dumas, 463 S.E.2d at 644. "However, for purposes of piercing

the corporate veil, fundamental unfairness can exist in the absence of fraud, and may be proved by a lesser showing than reckless disregard." Id.

In Dumas v. InfoSafe Corp., a key case establishing South Carolina's veil-piercing criteria, the court found sufficient evidence to pierce the corporate veil and find its sole shareholder open to liability because: (1) the corporation had been undercapitalized since its inception; (2) it failed to hold directors meetings and observe other corporate formalities; (3) it did not pay dividends; (4) it was insolvent and could not pay its employees' wages; (5) the corporations funds were "regularly transferred to [the sole shareholder and his wife], allegedly for repayment of certain loans to the company"; (6) the shareholder, as the corporation's president, made all the hiring decisions; and (7) the shareholder put about $300,000 of his own money into the corporation and described his occupation as "entrepreneur." Id. These facts clearly demonstrate that the president, as sole shareholder of the corporation, had created the corporation to act as a shield for his own personal business dealings in order to protect himself from liability.

By contrast, the parties here have not presented the court with any evidence regarding whether Waste Pro SC is undercapitalized or fails to observe corporate formalities; there has been no reference to the payment of dividends or whether the subsidiary is insolvent. There is no evidence before the court that Waste Pro USA siphons funds from Waste Pro SC, that Waste Pro SC's officers are non-functioning and merely for show, or that Waste Pro SC lacks proper corporate records. In sum, there is no evidence that Waste Pro SC "is merely a façade for the operations of" Waste Pro USA. Id. Indeed, the evidence shows that Waste Pro SC hires and fires employees, manages their own trash routes and business operations, and exists as a separate corporate

entity from its parent corporation. As the ScanSource court reiterated when declining to pierce the corporate veil to exercise personal jurisdiction over the parent corporation, "[t]he mere fact that [a parent company] shares administrative functions and some executives with its subsidiaries, guarantees its subsidiaries, and has a Web site that lists its and its subsidiaries' business partners, is not enough to subject it to this Court's general jurisdiction." ScanSource, 2011 WL 2550719, at *5.

### 3. No Specific Personal Jurisdiction over Waste Pro USA

In addition to not having general personal jurisdiction over Waste Pro USA, the court finds that it may not exercise specific personal jurisdiction over Waste Pro USA for this case. The Fourth Circuit applies a three-part test when evaluating the propriety of exercising specific personal jurisdiction: (1) whether and to what extent the defendant purposely availed itself of the privileges of conducting activities in the forum state, and thus invoked the benefits and protections of its laws; (2) whether the plaintiff's claims arise out of those forum-related activities; and (3) whether the exercise of jurisdiction is constitutionally "reasonable." Christian Sci. Bd. of Dirs. of the First Church of Christ v. Nolan, 259 F.3d 209, 215–16 (4th Cir. 2001) (citing Helicopteros, 466 U.S. at 414–16; Burger King v. Rudzewicz, 471 U.S. 462, 472, 476–77 (1985)). The first prong of the Nolan test for specific personal jurisdiction concerns whether a defendant has "purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." J. McIntyre Mach., Ltd. v. Nicastro, 564 U.S. 873, 877 (2011) (quoting Hanson, 357 U.S. at 253). The "purposeful availment" element ensures that a defendant will not be haled into court in a jurisdiction solely as a result of "random," "fortuitous," or "attenuated" contacts or the unilateral

21

activity of another person or third party.  <u>Burger King</u>, 471 U.S. at 475.  Even a single

contact with the forum state can constitute purposeful availment sufficient to satisfy due

process requirements, if substantial enough.  <u>Id.</u> at 475 n.18 ("So long as it creates a

'substantial connection' with the forum, even a single act can support jurisdiction.").

The Fourth Circuit has relied on several nonexclusive factors to determine

whether a defendant has purposefully availed itself of a forum in the context of a business

relationship, including:

> whether the defendant maintains offices or agents in the forum state;
> whether the defendant owns property in the forum state; whether the
> defendant reached into the forum state to solicit or initiate business; whether
> the defendant deliberately engaged in significant or long-term business
> activities in the forum state; whether the parties contractually agreed that
> the law of the forum state would govern disputes; whether the defendant
> made in-person contact with the resident of the forum in the forum state
> regarding the business relationship; the nature, quality and extent of the
> parties' communications about the business being transacted; and whether
> the performance of contractual duties was to occur within the forum.

<u>Consulting Eng'rs Corp. v. Geometric Ltd.</u>, 561 F.3d 273, 278 (4th Cir. 2009) (citations

omitted).  The second factor in the specific jurisdiction analysis—that the litigation

results from alleged injuries that "arise out of or relate to" the defendants purposeful

availment into the state in question—is an equally important element in the court's

analysis of this case.

Plaintiffs' claims against defendants relate primarily to how plaintiffs are paid for

their work.  Plaintiffs claim that Waste Pro[3] violated the FLSA and various state statutes

---

[3] While plaintiffs now argue that Waste Pro USA is equally responsible for all of these
claims as its subsidiaries, as it allegedly set the pay rate and made other determinations
regarding pay, the complaint refers primarily to "Waste Pro," without a specific
designation as to which entity it means.  This was apparently done pursuant to plaintiffs'
legal theory that all of the Waste Pro corporations were operating as a joint employer /

by improperly calculated their[4] regular pay rate. Plaintiffs allege that this resulted in a further miscalculation of plaintiffs' overtime pay, meaning that they should have received overtime compensation at a rate not less than one and one-half times their true regular rate. Plaintiffs also claim that "Waste Pro violated the day rate plan" by compensating plaintiffs with a date rate plus other forms of compensation that were not in compliance with the day rate provision of 29 C.F.R. § 778.112. Plaintiffs also allege that they did not receive their full day rate if they did not work a full day, in violation of § 778.112. Additionally, "Waste Pro" allegedly permitted and even encouraged plaintiffs to perform pre-trip and post-trip work duties without pay, and also deducted thirty-minute meal periods from plaintiffs' tally of daily hours worked, despite knowing that plaintiffs routinely worked throughout their designated meal times. Plaintiffs bring causes of action for recovery of overtime compensation, 29 U.S.C. § 207, and for violation of the SCPWA and the NCWHA. The court must now consider whether Waste Pro USA purposefully availed itself of the privilege of conducting business within South Carolina and if those contacts are related to the claims in this matter.

In determining purposeful availment, the court relies on the seven factors the Fourth Circuit set forth in <u>Consulting Eng'rs Corp.</u> First, Waste Pro USA does not maintain offices or agents in the forum state. Next, Waste Pro USA does not own

---

single integrated enterprise. The court discusses this theory further in Section III.A.2. For now, the court views the allegations in the light most favorable to the plaintiff and treats them as if they were specifically alleged against Waste Pro USA, in addition to the subsidiaries, in considering whether to exercise specific personal jurisdiction over Waste Pro USA.

[4] Plaintiffs include both named plaintiffs and putative class members in all of their allegations.

property in South Carolina; rather, Waste Pro SC owns and operates all Waste Pro

facilities in this state.  ECF No. 37-2, Aff. Of Waste Pro USA Chief Operating Officer ¶¶

5, 7.  Third, regarding whether Waste Pro USA reached into South Carolina to solicit or

initiate business, the Waste Pro handbook allegedly says that

> [n]o supervisor or member of management, except John Jennings (President
> & CEO), has the authority to bind the company to any employment contract
> for any specified period of time with any employee, either verbally or in
> writing.  The only valid contract for employment between the company and
> any employee must be in writing and signed By John Jennings (President &
> CEO).

ECF No. 141 at 18, citing WPSC00198.  As previously mentioned, there is no ECF

citation to this handbook that would enable the court to confirm plaintiffs' assertions

about the handbook's contents.  Even presuming that that the handbook does say this, it is

not evidence that Waste Pro USA has reached into South Carolina to solicit or initiate

business at a sufficient enough rate to constitute purposeful availment, especially

considering that John Jennings is also an officer of Waste Pro SC. Furthermore, the

various regional vice presidents and division managers of the subsidiaries have testified

that they are the ones who solicit business in their respective states by pursuing and

orchestrating contracts for service with various municipalities.  ECF No. 104-3, Decl.

Russell Mackie ¶ 2; ECF No. 104-5, Decl. David Schneider ¶ 5.

Plaintiffs have not put forth evidence that Waste Pro USA deliberately engaged

in significant or long-term business actives in South Carolina or that it signed any

contracts with South Carolina entities in which the parties agree that South Carolina law

would govern disputes.  In regards to the sixth factor, whether Waste Pro USA made in-

person contact with South Carolina regarding the business relationship, there is some

evidence that Waste Pro USA employees and officers routinely communicated with officers and employees for its subsidiaries about the business operations of the company. Plaintiffs have also shown that Waste Pro USA executives physically travelled to South Carolina to assist with Waste Pro USA's operations. Yet in order for these trips to create specific personal jurisdiction, they must relate directly to the claims in this case regarding setting a pay rate and enforcing compensation policies and procedures, but none of the alleged trips by Waste Pro USA employees to South Carolina related to the claims in this case. ECF No. 141 at 31. Plaintiffs have also submitted to the court an email chain between various Waste Pro employees in which Jennings, along with Shannon Early, the Waste Pro USA HR Director, were involved in the decision to grant bonuses for employees in the subsidiaries. ECF NO. 141 at 18, citing ECF No. 141-7, Ex. G. However, the decision of whether or not to grant a bonus to the two employees considered in this email chain is not related to the claims in this case. Furthermore, the declarations submitted by defendants show that most employment decisions are made at the subsidiary level. For example, an offer letter for a Waste Pro South Carolina employee that plaintiffs rely on to support their jurisdictional arguments actually came from the office manager for Waste Pro SC, not from a Waste Pro USA employee. ECF No. 141-16 at 2–3.

Finally, the court considers the nature, quality, and extent of the parties' communications about the business being transacted and whether the performance of contractual duties was to occur within the forum. Waste Pro employees contract with their respective subsidiary corporations, not with Waste Pro USA itself, when they sign their employment contracts. Furthermore, even though there is evidence of

communication between the out of state corporate Waste Pro USA employees and Waste Pro SC employees, in order for this to confer personal jurisdiction, it would have to demonstrate that Waste Pro USA was directly involved in the decisions regarding pay rate and compensation procedures in order to confer specific personal jurisdiction. The only evidence in plaintiffs' supplemental briefing which might support such a finding is an email chain between various Waste Pro USA employees discussing a hand-out they created to explain how the corporation calculates its overtime rate. ECF No. 141 at 27, citing ECF No. 141-21. This proposed handout calculates overtime rate as one-half of an employee's normal hourly rate. This allegedly improper calculation forms the basis of some of plaintiffs' claims—that Waste Pro improperly paid them one-half of their hourly rate as overtime compensation when they are actually entitled to time and a half (the value of one hour of work plus half an hour of work). Even though this email chain demonstrates that it is likely that Waste Pro USA either created or was involved in the creation of the rate calculation policy that underlies this dispute, this is not enough to create personal jurisdiction over Waste Pro USA. Plaintiffs have not presented, and the court has not found, any case law in which a court has exercised specific personal jurisdiction over a parent corporation merely because of the parent's creation of a <u>policy</u> that was then implemented by the subsidiaries that employed the plaintiffs. Such a formula would render a parent corporation liable to suit in literally any state where the employees of its subsidiaries live, so long as the parent engaged in any sort of corporate-wide policy-making upon which a suit could be brought. Part of the purpose of creating subsidiaries and holding companies is to mitigate liability, and corporations are allowed to do this, absent evidence of fraud or ill intent. If a plaintiff seeks to hold a corporation

liable for its actions and cannot reach that parent corporation through its subsidiary based on agency theories, then it should sue that corporation in the corporation's home state.

Regarding plaintiffs' claims that go beyond the pay rate calculation, such as the subsidiaries deducting pay for lunch breaks even though plaintiffs worked through lunch, the court's review of the evidence demonstrates that the subsidiaries themselves made most key decisions regarding compensation, not Waste Pro USA. First, several regional vice presidents for various Waste Pro subsidiaries declared that Waste Pro USA does not mandate the day rate that a division may assign a particular employee. ECF No. 104-1 ¶ 6. Rather, when a driver is hired by the subsidiary, the rate of pay is determined by whichever division manager supervises that driver. ECF No. 104-4 ¶ 8, 104-5 ¶ 8. Furthermore, multiple regional vice presidents declared that each individual Waste Pro subsidiary determines how to staff their respective locations and makes all decisions regarding management, accounting, and personnel matters. See All Declarations in ECF No. 401. The regional vice presidents and division managers, who are employees of the subsidiaries, not Waste Pro USA, have full authority regarding how to compensate their employees and whether to grant bonuses. Id. Furthermore, the declarants said that the payroll for employees is handled by the human resources departments of the various regions within the subsidiary, and that Waste Pro USA's only involvement in the payroll process is ensuring that all of its subsidiaries timely submit payroll records to ADP, their third-party processor.

Thus, the court finds that it does not have specific personal jurisdiction over Waste Pro USA and dismisses it as a defendant from this case.

#### 4. No General or Specific Personal Jurisdiction over Waste Pro FL

Plaintiffs have not demonstrated that Waste Pro FL should be subject to the court's general or specific personal jurisdiction.  It is a Florida corporation with its principal place of business in Florida.  As such, it is not subject the court's general personal jurisdiction.  It is also not subject to specific personal jurisdiction in South Carolina because there has been no evidence or even credible allegations that Waste Pro FL has had any relationship with South Carolina relating to plaintiffs' claims.

Plaintiffs have also attempted to persuade the court that it should exercise personal jurisdiction over all defendants through a JE / SIE theory, alleging that all defendants operate as a common business.  The court has researched this issue extensively and has found only one FLSA case in which a court exercised personal jurisdiction over out of state subsidiaries based on a JE / SIE theory.  Gilbert v. Freshbikes, LLC, 32 F. Supp. 3d 594, 598 (D. Md. 2014).  Yet the weight of the authority on this question has determined that the JE / SIE theory applies only to liability and cannot be relied upon to create personal jurisdiction.  See, e.g., Creech v. P.J. Wichita, L.L.C., 2017 WL 914810, at *1–8 (D. Kan. Mar. 8, 2017) (finding that a personal jurisdiction analysis should not involve an examination of the plaintiff's causes of action because, while "legislatures may enact different standards for what constitutes an employer or integrated enterprise for the purpose of liability," it would result in "in inconsistent determinations of personal jurisdiction if the Court were to find personal jurisdiction arising from employer liability theories," and personal jurisdiction "is a consistent standard that does not change based on the law a case hinges on");  Mendez v. Pure Foods Mgmt. Grp., Inc., 2016 WL 183473, at *1–7 (D. Conn. Jan. 14, 2016)

(finding that "legislators do not have that same flexibility to fashion a more relaxed standard of personal jurisdiction" and that none of the JE / SIE theories "—which might be appropriate for determining employer liability at a later stage of this litigation—are appropriate for determining in the first instance whether this court can exercise personal jurisdiction over" out of state defendants); In re Enter. Rent-A-Car Wage & Hour Employment Practices Litig., 735 F. Supp. 2d 277, 325–28 (W.D. Pa. 2010), aff'd, 683 F.3d 462 (3d Cir. 2012) ("The fact that a defendant would be liable under a statute if personal jurisdiction over it could be obtained is irrelevant to the question of whether such jurisdiction can be exercised."); Rodriguez v. Diego's Rest., Inc., 619 F. Supp. 2d 1345, 1350 (S.D. Fla. 2009) (applying the Supreme Court's reasoning from a Title VII case to the FLSA context in finding that "enterprise coverage is not jurisdictional"). The court agrees with the reasoning of these cases and finds that it may not exercise personal jurisdiction over any defendant through JE / SIE theory. Thus, the court dismisses Waste Pro FL from this action.

### B. Motions to Dismiss for Lack of Subject Matter Jurisdiction

Before analyzing the parties' motions to dismiss for lack for subject matter jurisdiction, the court must first note the changes in subject matter jurisdiction already rendered by this order. Because the court dismisses Waste Pro USA and Waste Pro FL as defendants from this action, leaving only Waste Pro SC and Waste Pro NC, the court must also dismiss all plaintiffs who were not employed by Waste Pro SC and Waste Pro NC. The court now considers the remaining arguments made by Waste Pro SC and Waste Pro NC in their motions to dismiss.

These remaining defendants both argue that plaintiffs' claims should be dismissed for lack of subject matter jurisdiction. First, defendants argue that plaintiffs lack standing to bring claims against Waste Pro SC and Waste Pro NC because no plaintiffs have alleged that either of these entities were their employer, which defendants argue is an essential element of all FLSA, SCPWA, and NCWHA claims. Defendants are correct that these statutes require plaintiffs to plead an employer-employee relationship. Defendants are also correct that the "consent to join wage claim" forms that plaintiffs submitted with their amended complaint state that the plaintiffs consent to participate in a collective action lawsuit against Waste Pro USA and do not specify the subsidiaries that actually employed them. See ECF Nos. 30-3, 30-4, and 30-5. Other than listing Waste Pro SC and Waste Pro NC as defendants in this action, the complaint itself does not bring allegations against these subsidiaries specifically; rather, the complaint refers consistently to "Waste Pro" and then alleges that Waste Pro USA and its various subsidiaries operated as a joint enterprise under the FLSA. Plaintiffs expound upon this theory in their responses to the motions for summary judgment, arguing that all defendants are joint employers of plaintiffs due to the corporation being a single enterprise. An employer under the FLSA is "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). Under this section, "[s]eparate persons or entities that share control over an individual worker may be deemed joint employers . . . ." Roman v. Guapos III, Inc., 970 F. Supp. 2d 407, 413 (D. Md. 2013).

Defendants also argue that the court should dismiss the case because not all plaintiffs have standing to sue each defendant. The "irreducible constitutional minimum of standing" requires (1) "an injury in fact—a harm suffered by the plaintiff that is

concrete and actual or imminent, not conjectural or hypothetical"; (2) "causation—a fairly traceable connection between the plaintiff's injury and the complained-of conduct of the defendant"; and (3) "redressability—a likelihood that the requested relief will redress the alleged injury." McBurney v. Cuccinelli, 616 F.3d 393, 402 (4th Cir. 2010). Defendants argue that the North Carolina plaintiffs cannot bring suit against Waste Pro SC as they do here, because Waste Pro SC did not cause those plaintiffs' alleged injuries and could not redress them, since Waste Pro SC does not employ the North Carolina plaintiffs. The same reasoning applies to the South Carolina plaintiffs being a part of a lawsuit against Waste Pro NC, which is not their employer and which cannot provide redressability for their alleged harms.

When faced with a similar situation, this district has previously found that "Plaintiffs' injuries are only traceable to, and redressable by, those who employed them." Crumbling v. Miyabi Murrells Inlet, LLC, 192 F. Supp. 3d 640, 644 (D.S.C. 2016) (quoting Roman, 970 F.Supp.2d at 412). "Therefore, the Court must conduct an employer analysis to determine whether Plaintiffs may trace their injuries to each Defendant." Id. Other courts have been more lenient and have allowed suits like this one to proceed if plaintiffs sufficiently alleged joint employment under the FLSA. If Waste Pro USA were still a defendant in this action, the court might be able to overlook the lack of specificity regarding employment by Waste Pro SC and Waste Pro NC in the complaint, because plaintiffs did allege joint employment / joint enterprise theory in the complaint. However, that argument hinged on Waste Pro USA being a defendant, and there is no way for plaintiffs to allege that Waste Pro SC and Waste Pro NC are joint employers without their parent company linking them together. The Fourth Circuit has

set forth the following factors to aid in determining whether two entities are joint employers:

> (1) Whether, formally or as a matter of practice, the putative joint employers jointly determine, share, or allocate the ability to direct, control, or supervise the worker, whether by direct or indirect means;
> (2) Whether, formally or as a matter of practice, the putative joint employers jointly determine, share, or allocate the power to—directly or indirectly—hire or fire the worker or [ ] modify the terms or conditions of the worker's employment;
> (3) The degree of permanency and duration of the relationship between the putative joint employers;
> (4) Whether through shared management or a direct or indirect ownership interest, one putative joint employer controls, is controlled by, or is <u>under common control</u> with the other putative joint employer;
> (5) Whether the work is performed on a premises owned or controlled by one or more of the putative joint employers, independently or in connection with one another; and
> (6) Whether, formally or as a matter of practice, the putative joint employers jointly determine, share, or allocate responsibility over functions ordinarily carried out by an employer, such as handling payroll; providing workers' compensation insurance; paying payroll taxes; or providing the facilities, equipment, tools, or materials necessary to complete the work.
> *Id.* at 140–43, 2017 WL 360542 at *10–11. Further, because the status of a particular employment relationship is highly fact-dependent, we emphasized that the absence of a single factor—or even a majority of factors—is not determinative of whether joint employment does or does not exist. *Id.* at 142, 2017 WL 360542 at *11.

<u>Hall v. DIRECTV, LLC</u>, 846 F.3d 757, 769–70 (4th Cir. 2017), <u>cert. denied,</u> 138 S. Ct. 635 (2018) (emphasis added). The only factor that could possibly support finding that the relationship between Waste Pro SC and Waste Pro NC gives rise to joint employment is the fourth—"[w]hether through shared management or a direct or indirect ownership interest, one putative joint employer controls, is controlled by, or is <u>under common control</u> with the other putative joint employer." <u>Id.</u> However, even if the court were to find that these subsidiaries were under the common control of Waste Pro USA, this one factor must be balanced against the other <u>Hall</u> factors, which are not present in this case.

32

Thus, the court finds that the remaining defendants are not joint employers and that the complaint, as it stands, does not sufficiently allege that these particular defendants were the employers of the remaining plaintiffs.

Considering the fact that plaintiffs alleged joint employer theory in their complaint and that this theory is now rendered useless by the dismissal of Waste Pro USA, the court orders plaintiffs to file an amended complaint. This new complaint should reflect the court's determination that plaintiffs may not bring a claim in which both North and South Carolina plaintiffs are suing both Waste Pro NC and Waste Pro SC. Regardless of whether plaintiffs choose to re-file with North Carolina plaintiffs against Waste Pro NC or with South Carolina Plaintiffs against Waste Pro SC, this amended complaint should allege with appropriate specificity the existence of an employment relationship between the remaining plaintiffs and the remaining defendants.

### C. Motion to Dismiss for Failure to State a Claim

Waste Pro SC and Waste Pro NC also both ask the court to dismiss the complaint for failure to state a claim upon which relief may be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6). The defendants use almost identical arguments as when they asked the court to dismiss the complaint for lack of subject matter jurisdiction—that the complaint does not specify against which defendant it brings the case. This issue is rendered moot by the court's directive that plaintiffs file a new complaint. However, should plaintiffs' fail to properly re-file an amended complaint pursuant to the court's instructions, defendants may reassert their motion to dismiss for failure to state a claim.

### D. Preemption

Both Waste Pro SC and Waste Pro NC's motions to dismiss ask the court to dismiss the NCWHA claim, based on preemption grounds. Plaintiffs' responses to both motions to dismiss do not address the preemption argument. Instead, plaintiffs' response to Waste Pro SC's motion to dismiss drops the following footnote:

> Defendant also seeks dismissal of Plaintiffs' North Carolina Wage and Hour Act state law claim contained within the Second Amended Complaint (see D.E. 30-2, Count III, pp. 24-25). Plaintiffs do not concede that such a claim is preempted by the FLSA, but do agree to dismiss this count without prejudice. Therefore, Defendant's Motion to Dismiss is moot in this regard.

ECF No. 47 at 2 n.1. Plaintiffs' response to Waste Pro NC's motion to dismiss says nothing about preemption, although its first footnote appears to be an incomplete attempt to use the same language from its response to Waste Pro SC's motion and merely says "Defendant also seeks dismissal of Plaintiffs' North Carolina Wage and Hour Act state law [ ]". ECF No. 46 at 2, n.1. In their reply, defendants do not address the preemption issue again, but they certainly do not concede to plaintiffs' proposal to dismiss the NCWHA count without prejudice. Absent consent from defendants, the court will not dismiss a cause of action without prejudice merely because plaintiffs want it to. That is a decision for the court to make after both parties have argued the issue in their motions and responses. Plaintiff has failed to raise any argument in response to defendants' motions to dismiss the NCWHA claim on preemption grounds, and as such, the court grants the motions and dismisses this claim with prejudice.

### E. Motion to Severe and Transfer

On December 14, 2018, plaintiffs filed a motion to sever and transfer to Florida the claims against Waste Pro USA and Waste Pro FL. ECF No. 129. This was filed

weeks after defendants filed their supplemental briefing on personal jurisdiction. ECF No. 124. The court declined to enter an order granting the motion to sever and transfer, preferring instead to reach a decision on the merits of the motions to dismiss for lack of personal jurisdiction. Now that the court has found that it lacks personal jurisdiction over Waste Pro USA and Waste Pro FL, it finds the motion to transfer and sever to be moot.

## IV.   CONCLUSION

For the reasons set forth above, the court **GRANTS** Waste Pro USA and Waste Pro FL's motions to dismiss and **DISMISSES** them as defendants from the case. The court also **DISMISSES** all plaintiffs who are not employees of Waste Pro SC and Waste Pro NC. The Court **GRANTS** Waste Pro NC and Waste Pro SC's motion to dismiss plaintiffs' NCWHA claim. The court finds that the remaining North and South Carolina plaintiffs do not have standing to sue both Waste Pro NC and Waste Pro SC and orders plaintiffs to file an amended complaint within 15 days of the date of this order pursuant to the instructions given in this order. Defendants may re-allege their motions if plaintiffs do not properly re-file their complaint, as discussed in this order. The court also finds **MOOT** plaintiffs' motion to sever and transfer.

**AND IT IS SO ORDERED.**

_____
**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**July 25, 2019**
**Charleston, South Carolina**