IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Daniel Hansen, *individually and on behalf of all others similarly situated*, | ) | |
| | ) | No. 2:17-cv-02654-DCN |
| Plaintiff, | ) | |
| | ) | **ORDER** |
| vs. | ) | |
| | ) | |
| Waste Pro of South Carolina, Inc., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

The following matter is before the court on plaintiff Daniel Hansen's ("Hansen")

first and second motions for equitable tolling, ECF Nos. 151 and 191, and motion for

conditional class certification, ECF No. 193. For the reasons set forth below, the court

finds as moot the first motion for equitable tolling, grants the second motion for equitable

tolling, and grants the motion for conditional class certification.

## I.  BACKGROUND

The procedural history of this case is quite convoluted. However, because the

nature of that procedural history is directly relevant to the court's resolution of the instant

motions, the court recounts it here in some detail. Hansen, a Waste Pro employee in

South Carolina, and Anthony Wright ("Wright"), a Waste Pro employee in Florida,

originally filed this lawsuit with the court on October 2, 2017 against three separate

Waste Pro entities:  defendant Waste Pro of South Carolina, Inc. ("Waste Pro SC");

Waste Pro of Florida, Inc. ("Waste Pro FL"); and Waste Pro USA, Inc. ("Waste Pro

USA"). The first amended complaint joined Kenneth Privette ("Privette"), a Waste Pro

employee in North Carolina, as a plaintiff and Waste Pro of North Carolina, Inc. ("Waste

1

Pro NC") as a defendant.[1]  In their second amended complaint, deemed filed on December 6, 2017, the original plaintiffs brought the following causes of action: (1) violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, et seq.; (2) violation of the South Carolina Payment of Wages Act ("SCPWA"), South Carolina Code §§ 41-10-10, et seq.; and (3) violation of the North Carolina Wage and Hour Act ("NCWHA"), North Carolina General Statutes §§ 95-25.1, et seq..  ECF No. 30-2.

On December 20, 2017, Waste Pro USA and Waste Pro FL filed motions to dismiss for lack of subject matter jurisdiction, lack of personal jurisdiction, and failure to state a claim and sought the dismissal of plaintiffs' North Carolina claim based on preemption.  ECF Nos. 37 and 38.  Waste Pro SC and Waste Pro NC filed nearly identical motions to dismiss the same day but declined to assert lack of personal jurisdiction as a ground for their motions.  ECF Nos. 39 and 40.  On February 12, 2018, the court ordered the parties to conduct jurisdictional discovery and submit supplemental briefing on the issue of personal jurisdiction.  ECF No. 57.  On August 22, 2018, while the parties were engaged in jurisdictional discovery, the original plaintiffs filed a motion to conditionally certify a class with respect to their FLSA collective action claim.  ECF No. 99.  The court declined to consider the issue of conditional class certification until all jurisdictional issues were resolved.  Jurisdictional discovery proceeded until February 2019 because various discovery disputes and jurisdictional issues arose between the parties, some of which necessitated resolution by the court.  On April 16, 2019, the

---

[1] The court collectively refers to Hansen, Wright, and Privette as the "original plaintiffs."

original plaintiffs filed a motion to toll the statute of limitations during the pendency of their motion for conditional class certification.  ECF No. 151.

After the close of jurisdictional discovery, the court considered the then-defendants' motion to dismiss, and on July 25, 2019, the court filed an order granting Waste Pro USA and Waste Pro FL's motions to dismiss for lack of personal jurisdiction and dismissing those defendants from the case.  Accordingly, the court dismissed all plaintiffs who were not employed by the remaining defendants, Waste Pro SC and Waste Pro NC.  Because he was an employee of Waste Pro FL, the court dismissed Wright from the case.  The court further found that the original plaintiffs lacked standing to jointly assert claims against Waste Pro SC and Waste Pro NC and ordered the original plaintiffs to file an amended complaint in which the plaintiffs employed by Waste Pro NC (the "North Carolina plaintiffs") would proceed against Waste Pro NC or the plaintiffs employed by Waste Pro SC (the "South Carolina plaintiffs") would proceed against Waste Pro SC.

Instead, on August 9, 2019, the North Carolina and South Carolina plaintiffs collectively filed their Third Amended Complaint, ECF No. 173, which proceeded jointly against both Waste Pro SC and Waste Pro NC.  On August 23, 2019, Waste Pro SC and Waste Pro NC filed a motion to dismiss the Third Amended Complaint.  ECF No. 178.  On November 12, 2019, the court denied the motion to dismiss but ordered the plaintiffs to sever the matter into two separate lawsuits.  The court also ordered the plaintiffs to refile their motions for conditional class certification and equitable tolling with respect to each lawsuit.  The plaintiffs subsequently severed the matter into two separate lawsuits:

the lawsuit to which this order pertains and <u>Privette v. Waste Pro of North Carolina</u>, 2:19-cv-3221-DCN.

In this lawsuit, Hansen brings claims under the FLSA and the SCWPA against Waste Pro SC individually and on a collective and class-wide basis. Hansen is a former waste disposal driver for Waste Pro SC who claims that Waste Pro SC's company-wide policies deprived him and other similarly situated current and former waste disposal drivers of wages for hours actually worked. According to Hansen, Waste Pro SC did this in the following ways: (1) failing to pay its drivers time and one-half for each hour worked in excess of 40 hours per workweek, (2) erroneously calculating drivers' prevailing hourly rate; (3) requiring a certain number of hours before allotting day-rate pay; (4) requiring drivers to perform pre-shift and post-shift duties while not clocked in; and (5) automatically deducting thirty minutes for lunch breaks that defendants knew drivers worked through. Hansen brings this action on behalf of all other similarly situated non-exempt waste disposal drivers who were paid a day rate and who have been employed by Waste Pro SC at any time from September 29, 2014 through the final disposition of this matter.[2] To date, twenty additional plaintiffs have opted-in to Hansen's FLSA collective action (together with Hansen, "plaintiffs").

---

[2] The operative complaint defines the FLSA collective action members as waste disposal drivers who were subjected to the same allegedly unlawful policies as Hansen "at any time from September 29, 2014, through the final disposition of this matter." ECF No. 192, Fourth Amend. Compl. ¶ 6. However, the relevant statute of limitations for plaintiffs' FLSA claim is, at most, three years, and the original plaintiffs filed this lawsuit on October 2, 2017. Therefore, the FLSA collective action class should extend back to October 2, 2014, not September 29, 2014. Plaintiffs recognize as much in their motion for conditional certification, which defines the requested class as waste disposal drivers who worked for Waste Pro SC at any time from October 2, 2014 to the present. <u>See</u> ECF No. 193 at 1.

Prior to the severance, the original plaintiffs filed a motion for conditional class certification on August 22, 2018, ECF No. 99, and a motion for equitable tolling on April 16, 2019, ECF No. 151.[3]  Pursuant to the court's November 12 severance order, Hansen re-filed these motions to reflect the current posture of the lawsuit.  Hansen filed his motions for equitable tolling and conditional class certification on November 15, 2019. ECF Nos. 191 and 193, respectively.  Waste Pro SC responded to the motion for equitable tolling on December 2, 2019, ECF No. 198, and to the motion for conditional class certification on December 10, 2019, ECF No. 200.  Hansen replied with respect to the motion for equitable tolling on December 9, 2019, ECF No. 199, and with respect to the motion for conditional class certification on December 19, 2019, ECF No. 203.  On March 24, 2020, the court held a telephonic hearing on the instant motions.  Thus, these matters are now ripe for the court's review.

## II.  DISCUSSION

### A.  Motion for Class Certification

The parties dispute both whether plaintiffs should be conditionally certified as a class with respect to the FLSA claim and, in the event the court does so certify, the nature and scope of the resulting notice.  The court addresses each issue in turn.

#### 1.  Conditional Certification

Plaintiffs request that the court conditionally certify them as a class under their FLSA collective claim action and permit notice to be sent to all similarly situated

---

[3] Although the original motion for equitable tolling is still pending before the court, it has been superseded by Hansen's subsequent motion for equitable tolling.  The court therefore finds the first motion for equitable tolling, ECF No. 151, to be moot and considers only Hansen's subsequent motion for equitable tolling, ECF No. 191.

5

potential class members.  For the reasons discussed below, the court grants the motion

and permits notice to be sent to potential class members by means consistent with the

findings and instructions of this order.

Under the FLSA, a plaintiff may institute a collective action against his or her

employer on behalf of herself and other similarly situated employees.  Section 216(b) of

the FLSA states

> An action . . . may be maintained against any employer . . . in any Federal
> or State court of competent jurisdiction by any one or more employees for
> and in behalf of himself or themselves and other employees similarly
> situated.  No employee shall be a party plaintiff to any such action unless
> he gives his consent in writing to become such a party and such consent is
> filed in the court in which such action is brought.

29 U.S.C. § 216(b).  The mechanism outlined in § 216(b) is designed to facilitate the

efficient adjudication of similar claims by "similarly situated" employees by permitting

the consolidation of individual claims and the pooling of resources in prosecuting such

actions against their employers.  See Hoffmann–La Roche Inc. v. Sperling, 493 U.S. 165,

170 (1989); LaFleur v. Dollar Tree Stores, Inc., 30 F. Supp. 3d 463, 467 (E.D. Va. 2014).

In deciding whether the named plaintiff in an FLSA action is "similarly situated" to other

potential plaintiffs, courts generally employ a two-stage approach.  Purdham v. Fairfax

Cnty. Pub. Sch., 629 F. Supp. 2d 544, 547 (E.D. Va. 2009) (quoting Parker v. Rowland

Express, Inc., 492 F. Supp. 2d 1159, 1164 (D. Minn. 2007)); see also Pelczynski v.

Orange Lake Country Club, Inc., 284 F.R.D. 364, 367 (D.S.C. 2012).

The first step in this process, which is the subject of the instant motion, is the

"notice" or "conditional certification" stage.  Purdham, 629 F. Supp. 2d at 547.  With

regard to this conditional certification stage, "[t]he Supreme Court has held that, in order

to expedite the manner in which collective actions under the FLSA are assembled,

'district courts have discretion[,] in appropriate cases[,] to implement . . . § 216(b) . . . by facilitating notice to potential plaintiffs.'" Id. (quoting Hoffmann–La Roche, Inc., 493 U.S. at 169); see also Genesis Healthcare Corp. v. Symczyk, 569 U.S. 66, 75 (2013) (citation omitted) ("'[C]onditional certification' does not produce a class with an independent legal status, or join additional parties to the action. The sole consequence of conditional certification is the sending of court-approved written notice to employees, who in turn become parties to a collective action only by filing written consent with the court." (citing § 216(b))). The court's facilitating role is important, the Supreme Court has noted, because the remedial purpose of § 216(b) "depend[s] on employees receiving accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate." Hoffmann–La Roche, Inc., 493 U.S. at 170.

At this stage, a plaintiff must demonstrate that the proposed class members are "similarly situated" and that notice is "appropriate." Purdham, 629 F. Supp. 2d at 548. Notice is "appropriate" where the proposed class members' claims "share common underlying facts and do not require substantial individualized determinations for each class member." MacGregor v. Farmers Ins. Exch., 2012 WL 2974679, at *2 (D.S.C. July 20, 2012). A plaintiff's burden at this initial stage is lenient, "requiring only a modest factual showing sufficient to demonstrate that [the plaintiff] and potential plaintiffs together were victims of a common policy or plan that violated the law." Purdham, 629 F. Supp. 2d at 548. "At the notice stage, plaintiffs must simply demonstrate that there is 'some identifiable factual nexus which binds the named plaintiffs and the potential class members together.'" Turner v. BFI Waste Servs., LLC, 268 F. Supp. 3d 831, 841 (D.S.C.

2017) (citing <u>Heagney v. Eur. Am. Bank</u>, 122 F.R.D. 125, 127 (E.D.N.Y. 1988)); <u>Morgan</u>

<u>v. Family Dollar Stores, Inc.</u>, 551 F.3d 1233, 1260 (11th Cir. 2008) ("[P]laintiff has the

burden of showing a 'reasonable basis' for his claim that there are other similarly situated

employees."). A plaintiff need not demonstrate that potential class members' claims are

identical, only that plaintiff and potential class members were victims of a common

policy or scheme that violated the law. <u>Schmidt v. Charleston Collision Holdings Corp.</u>,

2015 WL 3767436, at *11 (D.S.C. June 17, 2015). Courts determine whether conditional

certification is warranted by examining the parties' pleadings and affidavits. <u>Id.</u> at *3.[4]

Although "the merits of plaintiffs' challenge are irrelevant in determining whether

the proposed class members are similarly situated," <u>Gordon v. TBC Retail Grp., Inc.</u>, 134

F. Supp. 3d 1027, 1036 (D.S.C. 2015), the court finds it worthwhile to provide an

overview of the relevant FLSA provisions. Plaintiffs seek to conditionally certify a class

under their FLSA claim based on two alleged FLSA violations: Waste Pro SC's failure to

pay a mandated overtime rate of one and one half times drivers' regular pay rate and

Waste Pro SC's requirement that drivers work a certain number of hours before allotting

day-rate pay. <u>See</u> ECF No. 194. Plaintiffs allege that "Defendant failed to compensate

---

[4] "Second, after the court has conditionally certified the class, the potential class members have been identified and notified, and discovery has been completed, 'a defendant may then move to decertify the collective action, pointing to a more developed record to support its contention that the plaintiffs are not similarly situated . . . .'" <u>Regan</u> <u>v. City of Charleston, S.C.</u>, 2014 WL 3530135, at *3 (D.S.C. July 16, 2014) (quoting <u>Pelczynski</u>, 284 F.R.D. at 368). At this "decertification stage," the court applies a heightened, fact-specific standard to the "similarly situated" analysis and considers various additional factors, including: (1) the disparate factual and employment settings of the individual plaintiffs; (2) the various defenses available to defendants that appear to be individual to each plaintiff; and (3) fairness and procedural considerations. <u>Id.</u> at *3. Because plaintiffs' motion requests conditional class certification, the court does not reach the second step.

all Waste Disposal Drivers at a time and one-half rate for those hours that they worked over forty [] each week."  ECF No. 193 at 9.  Indeed, the FLSA generally requires employers to compensate employees at the overtime rate for all work performed over 40 hours per week.  See 29 U.S.C. § 207(a)(1); see also Roy v. Cty. of Lexington, 141 F.3d 533, 538 (4th Cir. 1998); Flood v. New Hanover Cty., 125 F.3d 249, 251 (4th Cir. 1997) ("As a general rule, the FLSA provides that an employer may not employ an employee for a workweek longer than forty hours unless it pays its employee one and one-half times the employee's 'regular rate' for all hours in excess of forty.").  Employees are due overtime compensation regardless of whether they receive compensation on an hourly rate, 29 C.F.R. § 778.110, or a day rate, 29 C.F.R. § 778.112.

Further, plaintiffs allege that they were required to work a certain number of hours before they were eligible to receive their day-rate pay.  Such a practice would also be a violation of the FLSA under 29 C.F.R. § 778.112, which requires that a day rate be calculated "without regard to the number of hours worked in the day. . . ."  Thus, for the court to conditionally certify the plaintiffs and potential opt-in plaintiffs as a class in this case, plaintiffs must make a "modest showing", through their pleadings and affidavits, that they and potential class members were victims of a common scheme or policy that violated these FLSA mandates.

Hansen has presented four declarations as evidence that he and potential class members are "similarly situated."  The declarations are from Hansen, and former Waste Pro SC disposal drivers and opt-in plaintiffs Charles Brown ("Brown"), Darrell Bomeisler ("Bomeisler"), and Christopher Montero ("Montero").  Three of the declarations contain testimony that plaintiffs were victims of a common policy prevalent

throughout Waste Pro SC of requiring waste disposal drivers to work a certain number of hours before being eligible for their day-rate pay. For example, Brown testified in his declaration that his manager "advised me that I was not eligible to receive my day rate unless I worked a certain number of hours in the day." ECF No. 194-2 at 20. Bomeisler, in his declaration, similarly testified that "[s]everal Route Supervisors" advised him that he would not be eligible to receive his day-rate pay "unless [he] worked a certain number of hours during the day." Id. at 17; see also id. at 27, Decl. of Montero ("Route Supervisors Scott Floyd and Phillip Sadler advised me that I was not eligible to receive my day rate unless I worked at least four [] hours during the day.").

The declarations also contain evidence that Waste Pro SC's overtime-pay policy violated the FLSA's overtime pay provision. Bomeisler testified that he was "not compensated at a time and one-half rate for all of the hours that [he] work[ed] over forty each week." Id. at 17. Montero's declaration includes testimony that "Waste Pro compensated [him] at a half-time rate for the hours that [he] worked over forty [] each week." Id. at 28. The declarations of Brown and Hansen include similar testimony. Therefore, the court finds that plaintiffs have made a "modest showing" that they were the victims of a common unlawful scheme or policy during their employment at Waste Pro SC.[5] The evidence contained in the presented declarations are more than sufficient to

---

[5] The law is clear that the court determines whether to conditionally certify a class under the FLSA based on the pleadings and affidavits before it. Therefore, in determining whether plaintiffs have made a sufficient showing for conditional certification, the court only considers the pleadings and the declarations plaintiffs have presented.

In addition to the pleadings and affidavits, plaintiffs cite to a number of documents that are not relevant to the current lawsuit and do not involve the current defendants. For example, plaintiffs present testimony from trials against other Waste Pro entities as evidence that plaintiffs in this case are similarly situated. The court doubts the

meet the lenient standard for conditional class certification. See Turner, 268 F. Supp. 3d at 841 (finding a sufficient showing where plaintiffs presented three declarations of former employees that alleged common FLSA violations).

In response, Waste Pro SC asserts several arguments. First, Waste Pro SC argues that the resolution of each of the plaintiffs' claims will require individualized treatment because each is governed by a different limitations period and each alleges violations by his or her individual superior. The law, however, is clear that the plaintiffs need not demonstrate that their claims are identical, only that they were victims of a common policy or scheme that violated the law. Schmidt, 2015 WL 3767436, at *11. The fact that an allegedly company-wide policy was enforced by individual managers does not render plaintiffs' claims under such a policy too individualized for conditional class certification. Of course, each plaintiff's claim arises from his or her own set of individual facts, but plaintiffs have made a "modest showing" that each individualized claim is rooted in the same allegedly unlawful policy, which is what the standard requires. Moreover, this court has found that an inquiry into the individualized nature of each plaintiff's claim can more accurately be assessed at the de-certification stage. Turner, 268 F. Supp. 3d at 842 ("After plaintiffs have the benefit of opt-in discovery, if [defendant] chooses to file a motion to decertify the class, the court will at that point examine the claims in-depth to determine if the regular rate claim would require too many individualized inquiries to withstand class certification.").

---

relevance of this evidence but need not consider the issue because plaintiffs' pleadings and affidavits demonstrate that plaintiffs and potential class members are "similarly situated" under the lenient conditional-certification standard.

Further, Waste Pro SC argues that plaintiffs' evidence does not make a modest showing with respect to the scope of the notice plaintiffs request. In other words, Waste Pro SC argues that because the declarations are from employees who worked at a specific location or at a specific time, they do not provide support for plaintiffs' allegations of FLSA violations at other locations and at different times. Therefore, Waste Pro SC argues, the declarations do not justify sending notice to waste disposal drivers who worked in other locations during different time periods. Waste Pro SC points out, for example, that the presented declarations contain the testimony of drivers who exclusively worked out of its Summerville location. Therefore, it argues, the declarations cannot provide support for conditional certification with respect to waste disposal drivers who worked in other Waste Pro SC locations. This argument improperly elevates the standard for conditional class certification. All that is required for conditional class certification is that plaintiffs make a modest factual showing that they and potential class members are similarly situated with respect to their FLSA claim. To require plaintiffs to make a modest factual showing with respect to every location and every time period covered by the allegations would remove all modesty from such a showing. Indeed, courts have found that evidence with respect to a single location or single time period is sufficient for a showing of a company-wide violation.[6] See, e.g., Barreda v. Prospect Airport Servs.,

---

[6] In support of its argument, Waste Pro SC relies on Mullis v. Wings Over Spartanburg, LLC, 2017 WL 749362 (D.S.C. Feb. 27, 2017). In that case, the court limited a conditional class of food and beverage service employees to one restaurant location where all the evidence presented by plaintiffs was specific to that location. However, the court based the limitation on the fact that "there [wa]s no evidence whatsoever that the other ten Wild Wing restaurants also use [the violating policy]." Id. at *3. Here, plaintiffs' declarations include testimony that drivers in other locations were governed by the same unlawful policy that the declarants allege governed their work.

Inc., 2008 WL 7431307, at *2 (N.D. Ill. Nov. 26, 2008) ("The fact that the only affidavits submitted in support of this finding come from [one location] does not diminish the nationwide applicability of the offending policy."). Therefore, the court grants plaintiffs' motion to conditionally certify a class under their FLSA collective action.

### 2. Notice

Now that the court has conditionally certified a class under plaintiffs' FLSA collective action, it must address the resulting notice to potential class members. Plaintiffs request that court-facilitated notice be sent to all "current and former Waste Disposal Drivers, who were/are employed by Defendant, Waste Pro of South Carolina, Inc., and who were/are paid on a job/day rate basis, within the last three [] years prior to the filing of the Original Complaint [filed on 10/2/17]." ECF No. 193 at 1. At the hearing, the parties contingently agreed upon several aspects of the notice in the event that the court found conditional certification appropriate. Therefore, the court addresses only those aspects of the notice that are disputed by the parties in their papers and trusts that the parties can work out the remaining logistics not addressed by this order amongst themselves.

### a. Scope of the Notice

As it argued with respect to the merits of plaintiffs' request for conditional certification, Waste Pro SC argues with respect to the resulting notice that plaintiffs have not presented sufficient evidence to include in the conditional class Waste Pro SC disposal drivers who worked out of locations, and during time periods, distinct from the

---

Moreover, the court agrees with the rationale of other courts who have found evidence of one location sufficient for a "modest showing" of an unlawful company-wide policy.

declarants.  As such, Waste Pro SC argues that the notice should be limited in location and in time based on the evidence plaintiffs present in the declarations.  For the same reasons discussed above with respect to the conditional class certification, the court rejects Waste Pro SC's argument and authorizes notice to be sent to waste disposal drivers in accordance with the parameters of the requested conditional class as set forth in plaintiffs' motion for conditional certification.  See ECF No. 193 at 1.

### b.  Methods of Distribution

Plaintiffs ask that notice be sent through the U.S. Mail, by email, and by text message.  Waste Pro SC objects to the distribution of the notice via text and email, arguing that such means are inappropriate, repetitive, and susceptible to abuse.  Courts in this district have found email to be an effective means of distribution that furthers the FLSA's broad remedial purpose.  See Turner, 268 F. Supp. 3d at 842; Regan v. City of Hanahan, 2017 WL 1386334, at *3 (D.S.C. Apr. 18, 2017); Irine v. Destination Wild Dunes Mgmt., Inc., 132 F. Supp. 3d 707, 711 (D.S.C. 2015); see also Lewis v. Huntington Nat. Bank, 2011 WL 8960489, at *2 (S.D. Ohio June 20, 2011) ("The addresses on file for [former employees] may or may not continue to be accurate, and using a second mode of communication will help ensure that all of these potential plaintiffs will receive at least one copy of the Notice Package."); Butler v. Direct SAT USA, LLC, 876 F. Supp.2d 560, 575 (D. Md. 2012) (noting that communication through e-mail is now the "norm.").  Therefore, the court authorizes email as a method of distribution.

Likewise, courts in this district have utilized text messaging as an effective method of notice distribution.  See Irine, 132 F. Supp. 3d at 711 ("[T]ext messaging

14

appears eminently reasonable to the Court.  This has become a much more mobile society with one's email address and cell phone serving as the most consistent and reliable method of communication"); Regan, 2017 WL 1386334, at *3 ("text messaging is reasonable because, in today's mobile society, individuals are likely to retain their mobile numbers and email addresses even when they move . . . .").  Therefore, the court authorizes text messaging as a means of notice distribution.

### c.  Reminder Notice

Plaintiffs ask that the court authorize the sending of a reminder notice if responses are not received from potential class members within a certain time frame.  This court has a practice of allowing such reminder notices.  See Turner, 268 F. Supp. 3d at 842 (authorizing reminder notices).  Therefore, the court authorizes the sending of one follow-up notice reminder via U.S. mail, email, and/or test message 30 days after the initial notice is sent to all potential class members who do not respond to plaintiffs' first attempt at notice.

### d.  Notice Period

Plaintiffs ask for a ninety-day notice period.  District courts in the Fourth Circuit generally authorize opt-in periods between thirty and ninety days.  See Mullis, 2017 WL 749362 at *4 (authorizing forty-five-day notice period); Schmidt, 2015 WL 3767436 at *10 (authorizing sixty-day notice period); Byard v. Verizon W. Virginia, Inc., 287 F.R.D. 365, 373 (N.D.W. Va. 2012) (authorizing sixty-day notice period); Steinberg v. TQ Logistics, Inc., 2011 WL 1335191, at *6 (D.S.C. Apr. 7, 2011) (same).  Given the circumstances of this case, the court finds that a sixty-day notice period is appropriate here and thus authorizes the same.

### e. Notice Discovery

The opt-in provision of the FLSA allows for the discovery of identifying information with respect to putative class members.  Parties dispute the scope of discovery that should be authorized.  Plaintiffs ask to discover potential class members' names, addresses, telephone numbers, email address, and social security numbers.  Waste Pro SC agrees to turn over the names and addresses of waste disposal drivers within the conditional class but objects to the remaining discovery requests.  Based on the analysis above, the court authorizes plaintiffs to discover the names, addresses, telephone numbers, and email addresses of potential class members, consistent with the parameters of the conditional class plaintiffs outline in their motion for conditionally certification.

However, the court denies discovery with respect to plaintiffs' request for potential class members' social security numbers.  Plaintiffs request discovery of social security numbers for the purpose of locating potential class members whose addresses have changed since their employment.  With respect to these potential class members, plaintiffs plan to utilize the national change of address database, which can reveal person's current address through the input of their social security number.  Because of the heightened privacy concerns that social security numbers implicate and because the use of email and text message mitigates the potential harm of a changed address, the court denies this request.

Finally, plaintiffs ask for the scope of discovery to reflect a three-year statute of limitations period.  Waste Pro SC objects and asks the court to limit the scope of discovery to waste disposal drivers employed within the last two years.  Under the FLSA, the limitations period is generally two years but can extend to three years where a

defendant's violation was willful.  See 29 U.S.C. § 255(a).  Here, plaintiffs allege willful

behavior and have not had the benefit of discovery to test that allegation.  Therefore, the

court authorizes discovery with respect to a three-year limitations period, meaning that

plaintiffs can discover information about waste disposal drivers who were employed by

Waste Pro SC at any time from October 2, 2014 to the present.

### f.   Third-Party Administrator

Waste Pro SC requests that a third-party administrator send notice to the

conditional class and that plaintiffs be required to bear the third-party administrator's

cost.  This court has found that "the privacy of potential class members weighs in favor

of requiring a third-party administrator" and that plaintiffs should generally bear those

costs.  Lynch v. Dining Concepts Grp., LLC, 2015 WL 5916212, at *7 (D.S.C. Oct. 8,

2015); see also Mullis, 2017 WL 749362, at *3.  Therefore, the court orders that parties

meet and confer to agree on a suitable third-party administrator and discuss the issue of

payment.  If the parties cannot reach a solution amongst themselves, either party can file

a motion, and the court will resolve the dispute at that time.

### B.  Motion for Equitable Tolling

In their motion for equitable tolling, plaintiffs request that the court toll the statute

of limitations on their FLSA claim from August 22, 2018, the day the original plaintiffs

filed the initial motion for conditional class certification, until the date on which the court

conditionally certifies a class under the plaintiffs' FLSA collective action, i.e., the date of

this order.  Plaintiffs argue that they satisfy the Fourth Circuit's test for equitable tolling

in FLSA collective actions because "extraordinary circumstances" have delayed the

conditional certification of their claim.  The court agrees.

The FLSA provides for a two-year limitations period or, where a defendant's violation is willful, a three-year limitations period. 29 U.S.C. § 255(a). Subject to certain exceptions, an action is commenced under the FLSA on the date the complaint is filed. 29 U.S.C. § 256. In the case of a collective action, if an individual claimant's name does not appear on the initial complaint, the plaintiff's action is commenced when he or she files written consent to join the action. 29 U.S.C. § 256(b). The FLSA requires that the statute of limitations continue to run for a potential claimant in an FLSA collective action until he or she consents in writing to become a party plaintiff. 29 U.S.C. §§ 216(b) and 256. Because potential opt-in plaintiffs may not receive notice of their right to join the collective action until it has been conditionally certified, courts regularly toll the FLSA statute of limitations where extraordinary circumstances cause delays in the court's conditional certification of the action.

"[A]ny invocation of equity to relieve the strict application of a statute of limitations must be guarded and infrequent, lest circumstances of individualized hardship supplant the rules of clearly drafted statutes." Chao v. Virginia Dep't of Transp., 291 F.3d 276, 283 (4th Cir. 2002) (citing Harris v. Hutchinson, 209 F.3d 325, 330 (4th Cir. 2000)). In the Fourth Circuit, equitable tolling is appropriate in two circumstances: (1) where the adverse party's misconduct caused the missed deadline, see Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96 (1990), or (2) where "extraordinary circumstances beyond the plaintiffs' control made" timely filing impossible. Hutchinson, 209 F.3d at 330. "Under the second scenario, plaintiffs bear the burden of demonstrating that: (1) they diligently pursued their rights and (2) some extraordinary circumstance prevented

timely filing." MacGregor v. Farmers Ins. Exch., 2011 WL 2731227, at *1 (D.S.C. July 13, 2011).

While a high barrier to overcome, courts have regularly found that a significant delay in a court's consideration of a motion for conditional class certification constitutes an "extraordinary circumstance" that warrants tolling. See Weckesser v. Knight Enterprises S.E., LLC, 2018 WL 4087931, at *3–4 (D.S.C. Aug. 27, 2018) (tolling the statute of limitations where the court's consideration of a motion for conditional class certification was delayed for over a year by an interlocutory appeal); Harris v. NPC Int'l, Inc., 2016 WL 3636067, at *4 (W.D. Tenn. June 29, 2016) (tolling the statute of limitations where preliminary and jurisdictional disputes delayed the court's consideration of a motion for conditional class certification for three years); Lorenzo v. Prime Commc'ns, L.P., 2014 WL 3366073 (E.D.N.C. July 9, 2014) (tolling the statute of limitations where plaintiffs' motion for conditional certification was delayed by, among other things, "motions for arbitration and related appeals"); Ruffin v. Entm't of the E. Panhandle, 2012 WL 28192, at *2 (N.D. W. Va. Jan. 5, 2012) ("Several courts have allowed equitable tolling of FLSA claims where the case's litigation posture has delayed the court's consideration of the motion for conditional certification and notice.") (collecting cases).

The district court in Harris explained the good sense of invoking the exceptional remedy of equitable tolling in the context of FLSA collective actions:

> In collective wage and employment cases, courts regularly grant equitable tolling so that plaintiffs may assert their claims despite the kinds of delays inherent in such litigation. The logic of this is clear upon considering the fact that the defendant initially is the party in sole possession of the names and last known physical addresses of all potential opt-in Plaintiffs. Without the possibility of equitable tolling, the value of FLSA collective actions

19

would routinely be diminished to the point of being unfeasible—as the potential recovery for the plaintiff class continuously lessens as cases are delayed.

2016 WL 3636067, at *4 (internal citations omitted).  Courts have noted that where the resolution of a motion for conditional certification is delayed, the claims of potential plaintiffs "die daily."  Hoffmann v. Sbarro, Inc., 982 F. Supp. 249, 260 (S.D.N.Y. 1997).

Here, the original plaintiffs filed their motion for conditional certification on August 22, 2018.  ECF No. 99.  At that time, the parties were engaged in court-ordered jurisdictional discovery.  On April 16, 2019, the original plaintiffs filed their first motion for equitable tolling.  In response, defendants argued that that issues of certification and tolling were premature given the pending motions to dismiss.  The court agreed and declined to address the motions for class certification and for equitable tolling until after it resolved the then-pending jurisdictional issues.  On July 25, 2019, almost a year after the original plaintiffs filed a motion for conditional class certification, the court resolved the jurisdictional issues before it and dismissed Waste Pro USA and Waste Pro FL from the case.  Before it considered the still-pending motions for equitable tolling and conditional class certification, however, the court resolved a final jurisdictional issue on November 14, 2019, which was necessitated by the Third Amended Complaint's misjoinder of the parties.  Suffice it to say that the jurisdictional issues and preliminary disputes between the parties have been both numerous and divisive and have delayed this court's consideration of the motion for conditional class certification.

In opposition to equitable tolling, Waste Pro SC relies on the high standard generally applicable to requests to equitably toll statutes of limitations and argues that the circumstances here are not "extraordinary."  Specifically, Waste Pro SC relies heavily on

this court's decision in <u>MacGregor v. Farmers Ins. Exch.</u>, 2011 WL 2731227, at *1 (D.S.C. July 13, 2011), where the court declined an FLSA plaintiff's request to equitably toll the FLSA's statute of limitations.  The circumstances in that case clearly did not warrant equitable tolling.  There, the defendant filed a motion to dismiss on March 3, the plaintiffs filed a motion for conditional class certification on March 4, and the court declined to equitably toll the limitations period on July 13.  The court found that its resolution of a motion to dismiss four months after the motion's filing did not constitute an "extraordinary circumstance": "[a] motion to dismiss is not out of the ordinary, nor is the time frame in which the court considered the motion; both are far from 'extraordinary' without more."  <u>Id.</u> at *2 (D.S.C. July 13, 2011).  Here, however, there is "more" and dramatically so.  The original plaintiffs filed their motion for conditional class certification on August 22, 2018, over nineteen months prior to the date of this order—more than a year and a half longer than the delay the <u>MacGregor</u> court considered.  Further, the tortuous procedural history of this case tells a story much more tangled and protracted than the filing of a simple motion to dismiss, as the court faced in <u>MacGregor</u>.  Moreover, the court in <u>MacGregor</u> declined the plaintiffs' request without prejudice, noting, "If, at some later date, extraordinary circumstances of delay arise, plaintiffs may refile their request . . . ."  <u>Id.</u>  This case presents just such extraordinary circumstances.

Additionally, Waste Pro SC contends that equitable tolling is inappropriate because plaintiffs have not diligently pursued their rights.  Specifically, Waste Pro SC argues that the delay in the court's consideration of the motion to conditionally certify "falls squarely on [plaintiffs'] shoulders" because "[p]laintiff[s] created the jurisdictional

quagmire by forum shopping." ECF No. 198 at 1 and 3. There are two problems with Waste Pro SC's argument, one in fact and one in law. As a factual matter, plaintiffs do not ask the court to toll the limitations period from the date that the jurisdictional disputes began; instead, plaintiffs request only that the court to toll the limitations period from the date on which the original plaintiffs filed their motion for conditional certification. The original plaintiffs filed this suit on October 2, 2017 against Waste Pro SC, Waste Pro FL, and Waste Pro USA. On December 20, 2017, all defendants filed motions to dismiss. On February 12, 2018, the court ordered the parties to conduct jurisdictional discovery. Six months into jurisdictional discovery, the original plaintiffs filed their motion for conditional certification. Plaintiffs' motion for equitable tolling asks the court to toll the statute of limitations from to the date on which the original plaintiffs filed the motion for conditional certification, not from the date on which the jurisdictional dispute began. In other words, plaintiffs ask the court to toll the limitations period from a date that is eight months after the defendants filed their motions to dismiss and six months after the court ordered the parties to conduct jurisdictional discovery. Thus, if the court grants the motion for equitable tolling, it would not toll the limitations period for the majority of the delay caused by the jurisdictional dispute.

Further, defendants cite to no law for the proposition that the original plaintiffs' inclusion of non-jurisdictional defendants amounts to a less than diligent pursuit of their rights. In fact, the relevant case law reveals that the opposite is true. See Irwin v. Dept. of Veterans, 498 U.S. 89 (1990) (finding equitable tolling appropriate "in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period"); see also Stickle v. SCIWestern Mkt. Support Ctr.,

L.P., 2008 WL 4446539, at *8 (D. Ariz. Sept. 30, 2008) (equitably tolling the limitations period during the pendency of motions to dismiss, even though the court granted the motions to dismiss with respect to some defendants).  To be sure, the original plaintiffs' inclusion of defendants over which this court did not have jurisdiction is in no small part responsible for the snail's pace at which this litigation has proceeded.  However, the court finds that the strategic misstep by the original plaintiffs does not justify turning a blind eye to the procedural nullification of the potentially meritorious claims of putative class members who have yet to receive notice of this collective action.  In other words, the court declines to deny potential opt-in plaintiffs their day in court because of the misguided litigation strategies of the original plaintiffs.  And, the court feels compelled to point out, defendants are not blameless in the delay of this litigation either.  Moreover, plaintiffs are in the correct forum with respect to the current defendant, Waste Pro SC, and there is no evidence that plaintiffs have been less than diligent in seeking conditional class certification, which is the issue currently before the court.

Moreover, the court notes that Waste Pro SC will not be prejudiced by the toll because it received notice that plaintiffs brought this suit as a collective action under the FLSA on the date of the original filing.  Plaintiffs, on the other hand, would be prejudiced by the significant delay in the court's consideration of the motion for conditional class certification because the claims of potential plaintiffs have "die[d] daily" in the interim. Hoffmann, 982 F. Supp. at 260.  Therefore, the court grants plaintiffs' motion to equitably toll the limitations period.

### III.   CONCLUSION

For the foregoing reasons the court **FINDS AS MOOT** the first motion for

equitable tolling, **GRANTS** the motion to for conditional class certification, and

**GRANTS** the second motion for equitable tolling.

**AND IT IS SO ORDERED.**

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**April 13, 2020**
**Charleston, South Carolina**